[Cite as *Radford v. Radford*, 2011-Ohio-6263.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
Nos. 96267 and 96445

---

## DIANA RADFORD

PLAINTIFF-APPELLANT

vs.

## BRUCE T. RADFORD

DEFENDANT-APPELLEE

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the

Cuyahoga County Common Pleas Court
Domestic Relations Division
Case No. CP D-310203

**BEFORE:** E. Gallagher, J., Stewart, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** December 8, 2011

**ATTORNEYS FOR APPELLANT**

Gregory J. Moore
By: Michele A. Kalapos
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, Ohio    44114

**ATTORNEY FOR APPELLEE**

Loreen M. Robinson
29550 Shaker Blvd.
Pepper Pike, Ohio    44124

EILEEN A. GALLAGHER, J.:

{¶ 1} In this consolidated appeal, appellant Diana Radford appeals from two orders of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, relating to postdivorce decree motions filed by appellant and her ex-husband, appellee Bruce T. Radford. Appellant appeals the trial court's December 22, 2010 judgment entry overruling appellant's objections to a March 30, 2010 magistrate's decision ruling on the various postdecree

motions filed by the parties, and the trial court's January 25, 2011 judgment entry denying appellant's request for written findings of fact and conclusions of law. For the following reasons we affirm in part, reverse in part, and remand for further proceedings.

{¶ 2} The parties were divorced pursuant to the trial court's judgment entry of November 8, 2007. Pursuant to that judgment entry the trial court ordered appellee to pay appellant $1,011.78 per month for the support of the parties' two minor children, $14,164.92 in arrears representing 14 months of unpaid child support retroactive to August 22, 2006, $408 per month as spousal support for 48 months, and $25,000 towards appellant's attorney fees as additional spousal support. The trial court based its support calculations on its finding that appellee had an annual income of $77,858. In arriving at this conclusion, the trial court described appellee's financial situation as of November 8, 2007 as follows:

> "[Appellee] works a night shift of four and a half hours per day at United Parcel Service where he is capable of earning $17,280 per year (4.5 hrs x $16.00 per hour x 240 work days). The primary benefit of this employment is free medical insurance for the family. [Appellee] is the owner and sole employee of an S-corporation known as Posture Support Manufacturing. Only the [appellee] has access to any records relative to the business, given his lack of credibility these records are of little assistance in determining his true earnings. Further, it is clear that the [appellee] has failed to take reasonable business actions and decisions during the pendency of this action, thus intentionally reducing his income as well as the value of the business for 2006 and 2007. To arrive at an income figure for the [appellee], the court will

rely on the [appellee's] disclosures to the Internal Revenue Service and look to the 2005 tax year. During that year the defendant received employee compensation from the business in the amount of $5,125 and instead of taking ordinary business income he repaid himself $55,453 for loans he had previously made to his business. When these are added to his United Parcel Service income of $17,280 he had an income of $77,858 and such figure will be used for the computation of support. Again, this court must emphasize that [appellee's] misleading information for subsequent years and his refusal to operate his business in a true businesslike fashion render his claimed income for those years incorrect."

{¶ 3} On August 21, 2008, appellant filed a motion to show cause and motion for attorney fees seeking appellee to be held in contempt pursuant to R.C. 2705.05 for his failure to comply with the trial court's support orders. Appellee filed an affidavit for the disqualification of Judge Timothy M. Flanagan on October 24, 2008. Appellee's affidavit was denied by the Ohio Supreme Court on November 11, 2008. Appellee subsequently filed a motion to modify child support and spousal support on December 3, 2008.

{¶ 4} In an affidavit attached to his motion to modify, appellee averred that his income from United Parcel Service had decreased from the trial court's calculation in November of 2007, no further loan repayments were available from Posture Support Manufacturing, and his income from his S-corporation had decreased to a salary of $1,150.00.

{¶ 5} The case proceeded to a hearing before a magistrate on July 13, 14, 15, 17, 29 and November 16, 17, 18, and 19, 2009 on appellant's motion to

show cause, appellee's motion to modify child support and spousal support, and numerous motions for attorney fees, motions for sanctions, and motions to strike filed by appellant relating to discovery disputes.

{¶ 6} The magistrate filed his decision on March 30, 2010, wherein he found that for the period of November 8, 2007 through December 3, 2008, appellee should have paid $18,173.18 in child and spousal support. Cuyahoga County Child Support Enforcement Agency ("CSEA") records reflected that appellee actually paid only $9,910.50 during that period. Noting that appellee admitted his failure to comply with the support orders, the magistrate found appellee in contempt for nonpayment of support. The magistrate further found appellee in contempt for failing to pay the outstanding $25,000 additional spousal support judgment for appellant's legal fees.

{¶ 7} Pursuant to his contempt finding the magistrate sentenced appellee to 30 days in jail or alternatively 200 hours of community service in lieu of incarceration. However, the magistrate allowed appellee the option to purge his contempt by submitting a $500 payment through CSEA within 30 days. Appellee's purge payment would be in addition to any obligation to pay current support and arrearage payments.

{¶ 8} In regard to appellee's motion to modify child support and

spousal support, the magistrate made the following findings:

"[Appellant] is employed part-time at United Parcel Service. He claims to work full time in his S-corporation 'Posture Support Manufacturing.' The Magistrate finds that [appellee] earned $14,901.72 from his employment with United Parcel Service in 2008, that he earned $4,307.40 from Integrity Staffing in 2008, and that he had income from distributions from Charles Schwab & Co. in 2008 in the amount of $771.77. In addition, he claims that his only income from Posture Support Manufacturing was in the amount of $1,320.00. Based upon the 2008 tax return for Posture Support Manufacturing, the Magistrate finds that additional income should be added back in the amount of $5,573.00 from compensation to officers, and depreciation. Based upon the documentary evidence the Magistrate finds that [appellee's] total gross income should be $26,873.89. Private health insurance is avaiable to [appellee] to cover the minor child through United Parcel Service at no cost to [appellee.]

"[Appellee] testified that he spends forty to forty-five hours per week working in his company. This testimony is contrary to his prior sworn deposition testimony that he works thirty to thirty-five hours per week in his business. [Appellee] blames the downturn in his business income on the 'lack of spousal assistance.' If the success of [appellee's] business depends upon his former wife's 'assistance,' then perhaps [appellee] should consider other alternatives since his former wife is no longer in his life. [Appellee's] rate of pay with United Parcel Service is $16.00 per hour. If [appellee] were to work full time at $16.00 per hour he would have annual gross income of $33,280.00. There was no evidence that [appellee's] current economic circumstances are any different than they were in 2008.

"The Magistrate finds that [appellee] is voluntarily under-employed, and that potential income should be imputed to him at the rate of $16.00 per hour. Accordingly, the Magistrate concludes that [appellee's] annual gross income should be $33,280.00 for the purposes of determining [appellee's] support obligations.

* * *

The Magistrate notes that at the time of the prior order support was determined based upon [appellee's] 2005 income that included a

substantial amount that [appellee] had characterized as loan repayments from his business. The Court relied upon [appellee's] 2005 tax return to ascertain that information, finding [appellee's] testimony regarding income during subsequent years to be unreliable. The Magistrate finds [appellee's] tax returns for 2007 and 2008 tax years to be credible. These returns were not available to the trial court at the time of the hearing on the prior order. The Magistrate further finds that a substantial change of circumstances has occurred since the prior order was entered in that [appellee's] income is less than half of the amount determined to be his income at the time of the prior order." (Magistrate's decision of March 30, 2010, page 3.)

{¶ 9} Pursuant to the above change in circumstances finding, the magistrate terminated appellee's spousal support obligation and reduced appellee's monthly child support payment to $546.27 per month plus a 2% processing fee. The court further ordered appellee to pay $109.26 per month in arrearage payments.

{¶ 10} In regard to the numerous outstanding motions for sanctions, motions to strike, and motions for attorney fees filed by appellant, the magistrate granted one of appellant's motions for attorney fees and concluded that the remaining motions should be dismissed because the matters related to the actions of one of appellee's attorneys and that the contested issues between appellant, appellant's attorney, and appellee's attorney had been resolved by agreement or had otherwise become moot. The magistrate proceeded to award appellant substantially all of her documented and submitted attorney fees relating to the entire post-decree

litigation.

**{¶ 11}** Appellant filed preliminary objections to the magistrate's decision on April 13, 2010, and supplemental objections on July 16, 2010. On December 22, 2010, the trial court issued a judgment entry overruling appellant's preliminary and supplemental objections and adopting the magistrate's March 30, 2010 decision with modifications. Appellant filed a request for written findings of fact and conclusions of law on December 23, 2010, which the trial court denied on January 25, 2011, citing the magistrate's detailed decision in the matter. Appellant brought the present appeal from the trial court's December 22, 2010, and January 25, 2011 judgment entries presenting the three assignments of error contained in the appendix to this opinion.

**{¶ 12}** Appellant's first assignment of error states as follows:

"The trial court erred and/or abused its discretion by overruling the appellant's objections to the magistrate's decision of March 30, 2010; and by adopting the magistrate's decision as an order of the court.

"A.    The trial court and magistrate erred and/or abused their discretion by finding that the issues of sanctions and attorney fees were either resolved by agreement or have otherwise become moot.

"B.    The trial court and magistrate erred and/or abused their discretion by finding that a change in circumstance had occurred.

"C.    The trial court and magistrate erred and/or abused their

discretion by finding the appellee's 2007 and 2008 income tax returns to be credible.

"D. The trial court and magistrate erred and/or abused their discretion by terminating the appellee's spousal support obligation.

"E. The trial court and magistrate erred and/or abused their discretion by modifying the appellee's child support obligation and order.

"F. The trial court and magistrate erred and/or abused their discretion in the determination of arrears.

"G. The trial court and magistrate erred and/or abused their discretion in the orders regarding the appellee's contempt.

"H. The trial court and magistrate erred and/or abused their discretion by failing to award to Diana all of her attorney fees and litigation expenses."

{¶ 13} Under Civ.R. 53(D)(4)(d), a trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." The trial court must conduct a de novo review of the facts and an independent analysis of the issues to reach its own conclusions about the issues in the case. *Kapadia v. Kapadia*, Cuyahoga App. No. 94456, 2011-Ohio-2255, ¶9, citing *Inman v. Inman* (1995), 101 Ohio App.3d 115, 655 N.E.2d 199.

{¶ 14} A trial court's ruling on objections to a magistrate's decision will

not be reversed absent an abuse of discretion. *Gobel v. Rivers*, Cuyahoga App. No. 94148, 2010-Ohio-4493, ¶16, citing *Remner v. Peshek* (Sept. 30, 1999), 7th Dist. No. 97CA98. Furthermore, when reviewing the propriety of a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard. *Gray v. Gray*, Cuyahoga App. No. 95532, 2011-Ohio-4091, at ¶7, citing *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. This includes a trial court's decision regarding a child support obligation. *Jarvis v. Witter*, Cuyahoga App. No. 84128, 2004-Ohio-6628, at ¶8, overruled on other grounds, *Siebert v. Tavarez*, Cuyahoga App. No. 88310, 2007-Ohio-2643, at fn. 2.

{¶ 15} An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. "Abuse of discretion" is a term of art, describing a judgment neither comporting with the record, nor reason. See, e.g., *State v. Ferranto* (1925), 112 Ohio St. 667, 676-678, 148 N.E. 362. "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Enterprises, Inc. v. River Place Comm. Redevelopment* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597. Further, an abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the

correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶15. Therefore, it is with this standard of review in mind, that we address appellant's first assignment of error.

**{¶ 16}** For ease of discussion we address appellant's numerous sub-arguments together and out of order where appropriate. Appellant's arguments 1-B through 1-E pertain to the trial court's finding that a change in appellee's financial circumstances had been demonstrated and the trial court's decision to grant appellee's motion to modify his spousal support and child support obligations.

**{¶ 17}** "Pursuant to R.C. 3119.79, when a party requests a child support modification, the court must recalculate the child support amount using the applicable statutory guidelines, schedules, and worksheets. A recalculated amount that varies more than ten percent from the existing amount 'shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.'" *Snyder v. Snyder*, Cuyahoga App. No. 95421, 2011-Ohio-1372, at ¶43, quoting R.C. 3119.79(A).

**{¶ 18}** R.C. 3105.18(F) defines a change in circumstances sufficient to modify a spousal support order and provides in pertinent part, "* * * a

change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses."

{¶ 19} Appellant initially argues that the trial court in the present instance was precluded by the doctrine of res judicata from considering appellee's motion to modify spousal support and child support because the trial court had previously considered his arguments regarding his income during the divorce trial and rendered judgment on this issue.

{¶ 20} The applicability of res judicata is a question of law that is subject to de novo review. *Dinks II Co., Inc. v. Chagrin Falls Village Council*, Cuyahoga App. No. 84939, 2005-Ohio-2317, at ¶19, citing *Rahawangi v. Alsamman*, Cuyahoga App. No. 83643, 2004-Ohio-4083. "The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." Id., quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 380, 1995-Ohio-331, 653 N.E.2d 226. Both theories of res judicata are used to prevent relitigation of issues already decided by a court on matters that should have been brought as part of a previous action. Id., citing *Lasko v. Gen. Motors Corp.*, Trumbull App. No. 2002-T-0143, 2003-Ohio-4103, at ¶16. "A valid, final judgment rendered upon the merits bars all subsequent

actions based upon any claims arising out of the transaction or occurrence that was the subject matter of the previous action." Id., quoting *Grava*.

{¶ 21} We find the case sub judice analogous to the factual situation presented in *Flege v. Flege*, Butler App. No. CA2003-05-111, 2004-Ohio-1929. In *Flege*, the Twelfth District Court of Appeals rejected a similar argument based upon res judicata. The husband in *Flege* was self-employed and in control of his own corporation. The husband's tax return for the year 2000 indicated that he had income of $133,567. During the divorce the husband testified that he hired a friend to work for his business and thus reduced his annual salary to $72,000. The trial court in *Flege* found the husband's testimony regarding his salary reduction not credible and refused to reduce his income for the purposes of calculating child support. The husband subsequently filed a post-decree motion to reduce his child support. Based on new evidence not presented during the divorce, the trial court found the husband's income for the year 2002 to be $72,085. On appeal the Twelfth District rejected the wife's argument that the husband was precluded by res judicata from seeking a change in circumstances based upon his reduced salary, an argument originally rejected at trial. The Twelfth District found the husband's motion to reduce support not to be barred by res judicata because the husband presented new evidence of his reduced corporate

earnings subsequent to the divorce decree.

{¶ 22} We find the same factual situation presently before us. In his decision, the magistrate specifically noted that the trial court's determination of appellee's income at the time of the divorce was based upon appellee's 2005 tax return including a "substantial amount that [appellee] had characterized as loan repayments from his business." The trial court rejected this characterization and attributed this amount to appellee's annual income. Appellee argued in his motion to modify that the loan repayments that the trial court included in assessing his income at the time of the divorce were no longer available, greatly reducing his income from his business. The magistrate further relied upon appellee's tax returns for 2007 and 2008, which the magistrate noted were not available to the trial court at the time of divorce.

{¶ 23} We find appellant's argument that the trial court was precluded by the doctrine of res judicata from considering appellant's motion to modify to be without merit as appellee presented new evidence of reduced earnings subsequent to the divorce decree. We do however find merit in appellant's argument that the trial court erred in relying *solely* on appellee's tax returns to conclude that a change in circumstances had occurred.

{¶ 24} We reiterate that "[c]ases involving child support obligations of

persons who own their own businesses are frequently complicated because they have some ability to control and/or report both the business's and their own financial transactions, including income, assets, and disbursements." *Cicchini v. Crew* (Dec. 18, 2000), Cuyahoga App. Nos. 74009 and 76954, at 9.

{¶ 25} When determining a parent's income for purposes of calculating child support, R.C. 3119.05(A) provides: "[t]he parents's current and past income and personal earnings shall be verified * * * with suitable documents, including, but not limited to, paystubs, employer statements, receipt and expense vouchers related to self-generated income, tax returns, and all supporting documents and schedules for the tax returns."

{¶ 26} In the present instance, a review of the magistrate's decision quoted above reveals that the trial court's finding of a change in circumstance was based solely on appellee's 2007 and 2008 personal and corporate tax returns. Though the record indicates that during discovery appellee turned over to appellant business records (Nov. 17, 2009 tr. 246), at least a portion of which were submitted as part of appellant's exhibit 20, no testimony was taken regarding these records and the magistrate relied instead upon appellee's tax returns.

{¶ 27} This court has previously held that, "[i]n computing income for child support purposes, where the parent derives income from a subchapter

S corporation, a judge must examine the financial data of the corporation, taking into account the entity's revenues and expenses, to determine the true income received and that determination of child support will not be disturbed absent an abuse of discretion." *Offenberg v. Offenberg*, Cuyahoga App. Nos. 78885, 78886, 79425 and 79426, 2003-Ohio-269, at ¶20; *Jarvis*, at ¶51 ("relying on a party's federal tax returns and limited admissions to determine child support is an abuse of discretion when that party owns a business or an interest therein.") "It is error for a judge to determine self-generated income of an owner of a Subchapter S corporation by placing blind reliance on corporate tax returns." *Offenberg*, at ¶38.

{¶ 28} In *Offenberg*, we explained that, "blind reliance on a corporate tax return for the income figure is an impermissible way to determine such income because it does not allow the judge to evaluate the possible manipulation of the numbers contained on the return to conceal income which, as a practical matter, may be available for child support purposes. Put another way, legitimate business expenses for income tax purposes may also be personal benefits for a parent, freeing up other income for possible child support distribution. 'In computing income for purposes of child support, a court should pay particular attention to the possibility that a spouse who is the sole shareholder of a business is engaged in "creative

accounting" designed to cloak net income. Therefore, the court needs to consider all financial data which relates to the operation of that spouse's business. The failure to do so has been found to constitute an abuse of discretion.'" Id. at ¶30, quoting *Corrigan v. Corrigan* (May 13, 1999), Cuyahoga App. Nos. 74088 and 74094.  (Internal citation omitted.)

**{¶ 29}** "The possibility of withdrawal of personal benefits from a closely held corporation for living expenses or other personal use requires sharp scrutiny of all available records to prevent avoidance of child support." *Sizemore v. Sizemore* (1991), 77 Ohio App.3d 733, 739, 603 N.E.2d 1032. This is particularly true in the case sub judice where appellee openly admitted that he charges personal items to his S-corporation's credit card (July 14, 2009 tr. 163), and the corporation pays his car payments, gas and car insurance. (July 13, 2009 tr. 107-109, July 14, 2009 tr. 164.)

**{¶ 30}** We find that the trial court abused its discretion in the present instance by adopting the magistrate's decision regarding appellee's change in circumstances because the magistrate relied exclusively upon appellee's personal and corporate tax returns.  We find that this portion of appellant's first assignment of error has merit.

**{¶ 31}** Appellant next argues in assignment of error 1-F that the trial court and magistrate erred and/or abused their discretion in the

determination of arrears.

{¶ 32} The November 8, 2007 judgment entry of divorce awarded appellant 14 months of child support arrears retroactive to August 22, 2006 totaling $14,164.92 at that time. Based on the trial court's spousal support and child support orders from the judgment entry of divorce, the magistrate, in his March 30, 2010 decision, found that appellee should have paid $18,173.18 in combined spousal and child support during the period of November 8, 2007 to December 3, 2008. Pursuant to CSEA records (Plaintiff's Exhibit 9), the magistrate found that appellee actually paid $9,910.50 during that period, resulting in additional arrears of $8,262.68 and a total arrearage of $22,427.60.

{¶ 33} Based on the magistrate's finding of a change in circumstances and decision to terminate appellee's spousal support obligation and reduce appellee's child support, the magistrate then noted that for the period of December 3, 2008 through July 13, 2009 appellee should have paid $4,007.56 based on the new, lower rates. The magistrate found that appellee actually paid $4,651.09 during this period resulting in a credit of $583.53. The magistrate concluded that appellee's arrearage as of July 13, 2009 was $17,776.51. It is unclear from the record how the magistrate arrived at this figure. The trial court however amended the magistrate's calculation and

subtracted appellee's $583.53 credit from appellee's accumulated arrearage as of December 3, 2008 ($22,427.60) and calculated appellee's arrearage to be $21,844.07.

{¶ 34} The trial court nonetheless based its final arrearage calculations on the magistrate's change in circumstances finding and the modified spousal and child support obligations. Because we found above that the trial court abused its discretion in finding a change in circumstance, appellant's error 1-F is sustained to the extent that the trial court's arrearage calculation relied upon the modified spousal and child support obligations and is remanded for proper calculation consistent with this opinion.

{¶ 35} Appellant argues in her assignment of error 1-G that the trial court and magistrate abused their discretion in the orders regarding the appellee's contempt.

{¶ 36} We review a finding of contempt under an abuse of discretion standard. *In re Contempt of Modic*, Cuyahoga App. No. 96598, 2011-Ohio-5396, at ¶7, citing *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 573 N.E.2d 62. In contempt proceedings, a reviewing court places great reliance upon the discretion of the judge, both in her finding of contempt and in the penalty imposed. *In re Contempt of Feng*, Cuyahoga

App. No. 95749, 2011-Ohio-4810, at ¶54, citing *Arthur Young v. Kelly* (1990), 68 Ohio App.3d 287, 294, 588 N.E.2d 233.

{¶ 37} Without any citation to authority appellant complains that the trial court's contempt sanction, stated above, was not sufficiently punitive to induce appellee's compliance with the trial court's order. Appellant states "the purge amount should have been at least in the amount of 20% of the arrearage" without any explanation for how appellant reached this conclusion. In light of the appellee's continuing monthly obligation to pay both support and $109.26 towards his arrearage, we cannot say that the trial court abused its discretion by limiting appellee's purge amount to $500. See *Kaput v. Kaput*, Cuyahoga App. No. 94340, 2011-Ohio-10, at ¶35, holding that given the magistrate's findings, the fact that the court did not order a more severe punishment for contempt rather than payment on the arrearage, is neither an error of law, nor an abuse of discretion.

{¶ 38} Finally, in assignments of error 1-A and 1-H appellant takes issue with the trial court's rulings on appellant's various motions for sanctions and attorney fees and the court's calculation of appellant's attorney fees.

{¶ 39} The record reflects that appellant's August 21, 2008 motion to show cause and motion for attorney fees sought relief including

reimbursement of appellant's attorney fees in pursuing this matter. Appellant further filed a motion for sanctions on April 20, 2009, including an award of attorney fees pursuant to Civ.R. 37(A)(4) regarding a discovery dispute and a motion for sanctions and attorney fees on July 2, 2009 alleging frivolous conduct against appellee and one of his attorneys.

{¶ 40} Appellant eventually reached a resolution with appellee's attorney in regard to the claims for sanctions and attorney fees against her and the trial court signed a judgment entry evidencing the same on February 19, 2010. The judgment entry stated that the agreement did not resolve appellee's pending requests for sanctions and attorney fees against appellee personally.

{¶ 41} Appellant argues that the magistrate and trial court failed to address the outstanding claims against appellee personally. We find that appellant's argument is not supported by the record. The magistrate in his decision granted appellant's original motion for attorney fees, dismissed her remaining motions as resolved by agreement or otherwise moot, and awarded her a judgment against appellee for substantially all of her documented and submitted attorney fees relating to the entire post-decree litigation. However, we do find merit to appellant's argument that the trial court abused its discretion in its calculation of appellant's attorney fees.

{¶ 42} It is within the sound discretion of the trial court to award attorney's fees in a divorce action. *Lemke v. Lemke*, Cuyahoga App. No. 94557, 2011-Ohio-457, at ¶38, citing *Schafer v. Schafer*, Lucas App. No. L–00–1255, 2002-Ohio-129. A decision to award attorney's fees will be reversed only upon a showing of an abuse of discretion. Id.

{¶ 43} R.C. 3105.73(B) provides:

"(B) In any post-decree motion or proceeding that arises out of an action for divorce, * * * the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties's income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."

{¶ 44} In regard to a contempt finding for failure to pay a spousal support obligation, R.C. 3105.18(G) provides:

"(G) If any person * * * required to pay spousal support under an order made or modified by a court on or after January 1, 1991, is found in contempt of court for failure to make alimony or spousal support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and shall require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt."

{¶ 45} In regard to a contempt finding for failure to pay a child support obligation, R.C. 3109.05(C) provides:

"(C) If any person required to pay child support under an order made under division (A) of this section on or after April 15, 1985, or modified

on or after December 1, 1986, is found in contempt of court for failure to make support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt and, on or after July 1, 1992, shall assess interest on any unpaid amount of child support pursuant to section 3123.17 of the Revised Code."

{¶ 46} Appellant argues that the magistrate "inexplicably and without articulating findings, analysis or reasoning" found a reward of attorney fees and litigation expenses in the amount of $21,376.28. Contrary to appellant's argument, the magistrate did in fact provide an analysis and reasoning on this topic, stating:

"Plaintiff also seeks an award of her reasonable attorney fees. Pursuant to Ohio Revised Code Section 3109.05(C), when any person is found in contempt of court for failure to make support payments, the court must assess all court costs against such person and require the person to pay any reasonable attorney's fees of the adverse person. The magistrate finds that counsel expended 63.2 hours in this matter at hourly rates of $250.00, $125.00, and $400.00 depending upon the person from counsel's office performing the service, the bulk of the services being rendered at what appears to be an associate rate rather than a partner rate. The fees total $19,677.50. Plaintiff also incurred $1,698.78 in litigation expenses, of which $1,262.00 constituted court reporter fees. The Court further finds counsel's hourly rates to be customary for an attorney of counsel's experience in this area. The Court further finds that this matter was complicated by ancillary issues raised by Defendant. Most of the ancillary matters for which Plaintiff incurred legal fees were provided for Defendant free of charge from several attorneys from whom he had counsel. Considering all of the circumstances surrounding this matter, the Magistrate finds attorney fees and litigation expenses in the amount of

$21,376.28 to be reasonable."[1]

{¶ 47} Appellant argues that magistrate and trial court erred by not awarding her attorney fees and litigation expenses in the amount of $40,991.94. While the record supports appellant's argument that the trial court erred in calculating her attorney fees, the total amount of fees and expenses sought by appellant are not evidenced in the record.

{¶ 48} Appellant submitted attorney fee bills (plaintiff's Exhibit 21) at the hearing in conformance with Cuyahoga County Domestic Relations Loc.R. 21 and testified regarding the same. (Nov. 19, 2009 tr. 341.) A significant portion of appellant's claimed fees appear to be derived from appellant's own calculation of interest on outstanding bills at an unspecified interest rate. Without further information on this rate and without the matter of interest being specifically addressed in the magistrate's order, we cannot deem the magistrate's decision to excise appellant's self generated interest from his fee bill an abuse of discretion. Furthermore, we note a large gap in the billing records submitted by appellant for the period of March 13, 2009 through July 17, 2009. The ending balance on the March

---

[1]We note that the trial court in adopting the magistrate's decision awarded appellant solely her attorney fees as calculated by the magistrate in the amount of $19,677.50 and did not include appellant's litigation expenses. It is unclear from the record if this was an intentional modification by the trial court or an omission.

13, 2009 bill is $4,775.35. The next bill, from July 17, 2009, reflects a starting balance of $19,480.20. Appellant failed to submit records in compliance with Loc.R. 21 to explain this significant gap in the billing records and the magistrate correctly excluded the unexplained fees from this period.

{¶ 49} While we do not agree with appellant's claimed attorney fee amount, we do take issue with several aspects of the magistrate's calculation of fees and find the calculation to not be supported by the record. First, the magistrate appears to have included in his calculation an outstanding balance of $609.79 and a payment credit of $150 reflected on the earliest bill submitted by appellant, a bill dated November 7, 2008. Loc.R. 21(B)(1) states, "[a]t the time of the final hearing on the motion or pleading that gives rise to the request for attorney fees, the attorney seeking such fees shall present: (1) An itemized statement describing the services rendered, the time for such services, and the requested hourly rate for in-court time and out-of-court time." The record contains absolutely no documentation in conformance with Loc.R. 21(B)(1) to support this initial balance.

{¶ 50} Secondly, even including the $609.79 initial balance and the $150 payment credit, appellant's submitted bills total $19,687.29 as opposed to the $19,677.50 calculated by the magistrate. It appears that the

magistrate rounded down the $609.79 outstanding balance minus the $150 payment credit to reach $450 in the calculations.

{¶ 51} Finally, appellant's attorney testified at the hearing to an additional 7.5 hours beyond the hours documented in appellant's exhibit 21, which reflect his time spent in court during the final days of the hearing in this matter. The magistrate's decision failed to account for these fees.

{¶ 52} Based on the above discrepancies, we find that the trial court abused its discretion in adopting the magistrate's calculation of appellant's attorney fees and remand for appropriate recalculation.

{¶ 53} Appellant's first assignment of error is sustained in part and overruled in part.

{¶ 54} We find appellant's remaining assignments of error to be moot.

{¶ 55} We reverse and remand for further proceedings consistent with this opinion. On remand, the trial court is instructed to compel the production of sufficient financial records pertaining to appellee's corporate earnings for a re-determination of appellee's self-generated income. *Offenberg* at ¶80; *Corrigan* at 11.

It is ordered that appellant and appellee shall bear their own costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the

lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

---

EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, J., CONCURS;
MELODY J. STEWART, P.J., CONCURS
IN JUDGMENT ONLY

## Appendix

*Assignment of Error No. 1*:

"The trial court erred and/or abused its discretion by overruling the appellant's objections to the magistrate's decision of March 30, 2010; and by adopting the magistrate's decision as an order of the court.

"A.   The trial court and magistrate erred and/or abused their discretion by finding that the issues of sanctions and attorney fees were either resolved by agreement or have otherwise become moot.

"B.   The trial court and magistrate erred and/or abused their discretion by finding that a change in circumstance had occurred.

"C.   The trial court and magistrate erred and/or abused their discretion by finding the appellee's 2007 and 2008 income tax returns to be credible.

"D.   The trial court and magistrate erred and/or abused their discretion by terminating the appellee's spousal support obligation.

"E.   The trial court and magistrate erred and/or abused their

discretion by modifying the appellee's child support obligation and order.

"F.    The trial court and magistrate erred and/or abused their discretion in the determination of arrears.

"G.    The trial court and magistrate erred and/or abused their discretion in the orders regarding the appellee's contempt.

"H.    The trial court and magistrate erred and/or abused their discretion by failing to award to Diana all of her attorney fees and litigation expenses."

*Assignment of Error No. 2*:

"The trial court's decision is against the manifest weight of the evidence."

*Assignment of Error No. 3*:

"The trial court erred and/or abused its discretion by denying appellant's request for written findings of fact and conclusions of law."