**PROCTOR, Appellant,**

v.

**PROCTOR, Appellee.**

[Cite as *Proctor v. Proctor* (1997), 122 Ohio App.3d 56.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–97–24.

Decided July 30, 1997.

*Michael J. Bender* and *Gregory M. Novak*, for appellant.

*Jerry M. Johnson*, for appellee.

---

EVANS, Presiding Judge.

This is an appeal by Max L. Proctor ("appellant"), from a judgment of the Court of Common Pleas of Allen County, Domestic Relations Division, overruling

the motion in contempt of Doris Proctor ("appellee") and modifying certain provisions of the parties' divorce agreement.

Appellant and appellee were divorced by a judgment entered on April 11, 1994. In its entry the court ordered the parties, pursuant to their own settlement agreement, to sell the marital residence for a price that would net them not less than $300,000, with appellee to receive the sum of $75,000 from the proceeds of sale, and appellant to receive the remainder of the proceeds, regardless of the selling price or the amount netted.[1] The judgment entry further provided that the parties could agree at any time thereafter "to accept such lesser selling price that will net less than Three Hundred Thousand Dollars ($300,000.00) but only if agreed to by both parties and in writing." The court also awarded appellee the right to reside in the parties' house until it was sold.

On July 17, 1996, appellee filed a motion in contempt against appellant, contending that appellant had broken into the house, forcing her and the children to vacate the premises, and that appellant had thereafter taken up residence therein as of July 31, 1995. Appellee also requested that the court force the sale of the marital residence, as the property had not sold after being on the market for over two years.

Following a hearing on the issue of the property sale only, the trial court declined to find appellant in contempt, but issued an order finding that the parties' agreement as executed was impracticable, and that "the $300,000.00 cap agreed to by the parties is not a distribution of property but merely a method of enforcement of that distribution and this Court has the ability to modify such to effectuate the distribution of property agreed to by the parties. To that end, the Court will ORDER that the parties shall accept any offer of $260,000.00 commencing March 1, 1997 and the parties will thereafter lower their threshold of acceptable offers by $5,000.00 per month until the property is sold."

The court then, in the alternative, granted appellant the "ability" to buy out appellee's interest in the property for the amount of $75,000 at any time prior to her accepting an offer to purchase the property.[2]

Appellant has appealed the court's order, asserting two assignments of error, as follows:

---

1. $75,000 was the amount of down payment appellee had contributed, from her separate property, to the building of the house.

2. The court's granting appellant the "ability" to pay appellee her $75,000 is irrelevant, as the parties have from the beginning had the option of settling the issue in this manner if they so desired, and "agreed" pursuant to the original judgment entry.

"The trial court erred in determining that it had subject matter jurisdiction to modify the terms of the property settlement as contained in the previously entered judgment granting divorce.

"The trial court acted in an arbitrary and capricious manner when ordering the sale of the marital property at a price not agreed to by the parties and requiring that the Defendant receive the first Seventy Five Thousand Dollars ($75,000.00) of the proceeds following the payment of taxes, commission and mortgage notwithstanding of [*sic*] the purchase price."

R.C. 3105.171(I) clearly sets forth the law as to the trial court's authority to modify its distribution of property under the divorce decree, as follows:

"A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court."

■ When the trial court adopted the parties' settlement agreement and incorporated it into the divorce decree, it lost "its nature as a contract the moment it [was] adopted." *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413, paragraph four of the syllabus. Therefore, the court has no authority under R.C. 3105.171 to modify the terms of its decree, except as follows:

"In enforcing a separation agreement that has been incorporated into a divorce decree, the trial court has the authority to hear the matter, clarify any confusion over the interpretation to be given a particular clause, and resolve the dispute." *Troha v. Troha* (1995), 105 Ohio App.3d 327, 332, 663 N.E.2d 1319, 1322 (citing *In re Dissolution of Marriage of Seders* [1987], 42 Ohio App.3d 155, 156–157, 536 N.E.2d 1190, 1192–1193).

■ However, it is axiomatic that construction of a contract, in this case the separation agreement, must be accomplished " 'so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.' " *Id.* (quoting *Skivolocki v. E. Ohio Gas. Co.* [1974], 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus). A party is not entitled to reparation or equity simply because he or she has made a bad bargain. A court may not rewrite an agreement simply because it believes the agreement could have or should have been written more fairly, absent evidence that the contract is in violation of public policy, or that a party was led to enter the agreement as a result of incompetency, fraud, duress, or undue influence. *Ervin v. Garner* (1971), 25 Ohio St.2d 231, 239–240, 54 O.O.2d 361, 365–366, 267 N.E.2d 769, 773–774; *Emerick v. Armstrong* (1824), 1 Ohio 513, 1824 WL 38; see, also, *Knapp v. Knapp* (1986), 24 Ohio St.3d 141, 148, 24 OBR 362, 367–368, 493 N.E.2d 1353, 1358–1359 (Celebrezze, C.J., dissenting).

■ There is no evidence in the record before us that the parties' separation agreement was anything other than mutual, nor are any of the terms of the agreement unclear or ambiguous. Furthermore, the divorce agreement and decree clearly provide for a contingency plan in the event the property does not sell for the amount desired by the parties. In such event, the parties agreed that the property could be sold for less than $300,000, "but only if agreed to by both parties and in writing." It is also clear from a reading of the parties' divorce decree that the intent of the court and of the parties was for appellee to recover no more and no less than her original investment of $75,000 from the sale of the marital property. Accordingly, we find that there was no ambiguity or confusion in the original agreement and court order which would require or permit the court's intervention herein. We therefore find that the court was without authority to assume jurisdiction over this case, other than to enforce its orders as written.

As noted by appellee in her brief, "it is interesting that the [trial] court recognized one avenue of permissible enforcement [of its divorce order] but failed to order the same." Appellee refers to the fact that the decree is clearly enforceable pursuant to the court's contempt power, which appellee intended to invoke with her motion. As the trial judge acknowledged, he could have ordered appellant to relinquish exclusive possession of the house to appellee, which was ordered by the court in the first place, at the time of the divorce. Such action would have reestablished the status quo, as originally intended by the parties. Rather, the court chose to improperly assume jurisdiction over the original decree, and then proceeded to modify it.

Finding that the court was without jurisdiction to modify the distribution of the parties' marital asset, we sustain appellant's first assignment of error, and consequently find the second assignment of error moot. The judgment of the trial court is reversed.

*Judgment reversed.*

HADLEY and THOMAS F. BRYANT, JJ., concur.