DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, David E. Straw, appeals from the decision of the Lorain County Court of Common Pleas, Domestic Division, which adopted a magistrate's decision regarding modification of a QDRO. We affirm.
 {¶ 2} Appellant and Appellee were divorced on October 2, 1990. According to an accompanying qualified domestic relations order ("QDRO") entered at the time of the divorce, Appellee was to receive a portion of the pension benefits earned by Appellant during their marriage. Nearly thirteen years later, on February 26, 2003, Appellee filed a motion to modify the original QDRO. A magistrate found that Appellee was due a set percentage of the total benefit amount paid monthly to Appellant, including the value of both the supplemental and monthly portion of Appellant's pension. Following consideration of objections by Appellant, the trial court adopted the magistrate's decision, and ordered entry of a clarified QDRO. The amended QDRO was approved by the trial court on January 8, 2004. Appellant timely appealed, raising one assignment of error for our review.
 ASSIGNMENT OF ERROR
"The trial court abused its discretion by modifying a property order involving a pension and granting more benefits to [Appellee] than the divorce decree and original [QDRO] granted her."
 {¶ 3} In his only assignment of error, Appellant asserts that the trial court abused its discretion by modifying an existing QDRO so that Appellee would receive more of a benefit than originally contemplated in the divorce decree. Appellant insists that the language of the original decree was unambiguous, and awarded Appellee only a percentage of his monthly benefit. Appellant contends that the trial court never intended Appellee to receive any portion of his supplemental monthly benefits which he earned due to early retirement. We disagree.
 {¶ 4} While a court has the power to enforce a property division incorporated into a divorce decree, R.C. 3105.65(B), a trial court may not modify that property division. R.C.3105.171(I); Bond v. Bond (1990), 69 Ohio App.3d 225, 228. However, "[w]here there is good faith confusion over the requirements of the dissolution decree, a court has the power to enforce its decree, to hear the matter, clarify the confusion, and resolve the dispute." Bond, 69 Ohio App.3d at 228. Where a clause in the divorce decree is ambiguous, a court "has broad discretion in clarifying ambiguous language by considering not only the intent of the parties but the equities involved." Id. This Court, therefore, reviews the trial court's interpretation of an ambiguity for an abuse of discretion. Id. A court has not abused its discretion unless its decision is the product of "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. This court is not permitted to substitute its own judgment for that of the trial court. Bowen v. Bowen (1999),132 Ohio App.3d 616, 626, citing In re Jane Doe 1 (1991),57 Ohio St.3d 135, 137-38.
 {¶ 5} In the case at bar, the original divorce decree stated that:
"[Appellee] shall receive a [QDRO] entitling her to an interest in [Appellant's] Pension Plan with Ford Motor Company in a monthly sum equal to one-half times twenty-two and seven tenths (22.7) year of marriage divided by total years of service times the benefit at time of distribution in the Ford Motor Company UAW Retirement Plan held in the name of [Appellant], and this Court reserves jurisdiction to enter any additional Orders necessary to effectuate this provision."
A QDRO was then entered granting Appellee the specified percentage of Appellant's "monthly benefit at time of distribution in the Ford Motor Company-UAW Retirement Plan[.]"
 {¶ 6} Eight years after the divorce, Appellant took a buy out from his employer, retiring in July 1998. Upon his early retirement, Appellant began receiving $455.62 as his life income benefit and $1,675.67 as his supplemental benefit, for a total of $2,131.29 per month. Appellant's employer interpreted the existing QDRO to include only division of the life income benefit, not the supplemental benefit, and began paying Appellee $101.76 per month.
 {¶ 7} Following Appellee's motion to modify the QDRO, the magistrate reviewed the transcript from the divorce proceedings, affidavits, and briefs from both parties, and found that:
"4. The Court specifically made an equal division of the parties' assets. The Court is quoted in the trial transcript at page 41 as follows: `I find that the total assets that the two of you have accumulated, over and above his pension plan with the Ford Motor Company, total $87,831.08. Following Cherry v.Cherry, I would divide those assets equally . . .'
"5. Later in discussing the pension the Court is quoted in the trial transcript at page 43, as follows: `On the pension * * * you are to prepare a QDRO order. Use 22.7 over 24 years. [Appellee] obtains 50 percent of that payable at the time [Appellant] would first take . . .'
"6. It is unambiguous that the Court intended [Appellee] to receive one-half of the parties' property accumulated during the marriage, including those accumulated through [Appellant's] pension during that time."[1]
Accordingly, the magistrate recommended that a new QDRO be entered specifically granting Appellee the specified percentage of Appellant's total benefits, not just his life income benefit.
 {¶ 8} The trial court agreed with the magistrate, adopted the magistrate's decision, and ordered entry of the new QDRO which stated that:
"[Appellee] shall receive a sum equal to one-half times twenty-two and seven tenths (22.7) years of marriage divided by total years of service times the monthly benefit at time of distribution in the Ford Motor Company-UAW Retirement Plan held in the name of [Appellant]. The total monthly benefit includes both the life income portion and the supplemental benefit portion."
 {¶ 9} After reviewing the record before us, we cannot say that the trial court erred in clarifying the original QDRO. It is apparent from the language utilized by the original court that the judge intended an equal distribution of all marital assets. The pension was determined to be a marital asset, and so the judge apportioned its value according to the number of years of the marriage. There is no indication that the judge knew that Appellant would retire early, though the judge did account for this possibility by awarding Appellee a set percentage of Appellant's "monthly benefit at the time of distribution" (emphasis added) rather than that same percentage of an estimated value of the pension at the date of the divorce. It is unlikely that the judge truly intended for Appellee to receive less than 5% of what Appellant receives monthly from his pension, when the QDRO indicated that Appellee should be receiving approximately 38% of that pension (22.7 divided by approximately 30 years of service times 50%). The amendment to the QDRO does nothing more than clarify whether "monthly benefit" includes all benefits paid per that pension monthly to Appellant, or merely a portion of them.
 {¶ 10} Appellant cites multiple cases which he contends indicate that the new QDRO is in fact an improper modification, rather than interpretation. See George v. George (Sept. 23, 1998), 9th Dist. No. 18866; Proctor v. Proctor (1997),122 Ohio App.3d 56; Cox v. Cox (Feb. 1, 1999), 12th Dist. Nos. CA98-04-045, CA98-05-054; Thomas v. Thomas (Apr. 26, 2001), 10th Dist. No. 00AP-541; McClarren v. McClarren (Nov. 18, 1991), 5th Dist. No. CA 755. Appellant cites George, Cox, andThomas for the proposition that "a party is not entitled to a modification of a property division simply because he or she later determines he or she deserves more than what the original decree called for." However, this assumes that the original decree intended that Appellant's monthly benefit not include any supplemental amount. As the court unambiguously intended originally to equally divide the value of the pension, Appellee was merely asking for the amount awarded her in the divorce, and no more.
 {¶ 11} All five cases cited are also distinguishable on the facts: every single case included an obvious modification of terms. In Thomas and McClarren the original decree ordered payment of a lump sum from a party's pension. In both cases, the trial court later changed that base amount to include interest accumulated on that amount, refusing to award only the unambiguous lump sum explicitly awarded in the divorce decree. See Thomas, supra; McClarren, supra. Appellate courts reversed both those decisions, stating that the addition of an interest provision was a modification of the terms, not an interpretation. See Thomas, supra; McClarren, supra.
 {¶ 12} George, Proctor, and Cox likewise included obvious modifications to previously created terms. In bothGeorge and Cox, the divorce decree and accompanying QDRO awarded one half of the value of a party's pension as of the date of the divorce. A later court in both cases determined that, instead of awarding one half of the pension valued at the date of the divorce, as per the original QDRO, the original court really intended to apply the commonly used coverture fraction[2]
instead. The appellate courts again found that, given the unambiguous direction to award half the value the pension as of the date of the divorce, later use of a distinct coverture fraction, not mentioned in the original decree of QDRO, was a modification and not an interpretation. See George, supra;Cox, supra.
 {¶ 13} Proctor also involved an obvious modification. The original divorce decree in that case dictated that the marital residence would not be sold for any amount less than $300,000.00 without the written consent of the parties. Two years later, after the house remained idly on the market, the court changed the order to permit sale of the residence for a minimum of $260,000.00, to decrease $5,000.00 per month until the residence sold. Again, the appellate court found that the change from the explicit $300,000.00 minimum to a $260,000.00 minimum, without the written consent of the parties, was an obvious change in the terms of the decree. See Proctor, 122 Ohio App.3d at 59-60.
 {¶ 14} In this case, the original QDRO awarded Appellee a certain percentage of Appellant's "monthly benefit at the time of distribution[.]" The trial court did not add an interest provision; it did not change the amount of a lump sum award; it did not change the date of valuation. Rather, the court merely determined that "monthly benefit" included the entire value Appellant received monthly from his pension. Given the obvious and unambiguous effort of the original court to divide the assets of the marriage equally, the trial court's interpretation of what constitutes Appellant's "monthly benefit at the time of distribution" does not constitute an abuse of discretion. Accordingly, we overrule Appellant's assignment of error.
 {¶ 15} We overrule Appellant's assignment of error, and affirm the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Batchelder, J., concur.
[1] While Appellant insists that the trial court actually found that the provision itself was unambiguous, that is not what the court said. The court indicated only that the intent behind the provision was unambiguous, not that the language of the provision was unambiguous.
[2] The coverture fraction is the number of years of the marriage divided by number of years of service times 50%. The court explicitly applied a coverture fraction in this case.