[Cite as *Ross v. Ross*, 2012-Ohio-5565.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| BRENDA ROSS nka SPENCER | | C.A. No. 11CA010091 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAMES E. ROSS, JR. | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 89 DU 037396 |

DECISION AND JOURNAL ENTRY

Dated: December 3, 2012

---

DICKINSON, Judge.

INTRODUCTION

{¶1} James and Brenda Ross divorced after 25 years of marriage. At the time of their divorce, the trial court approved a qualified domestic relations order that gave Ms. Ross "one-half" of Mr. Ross's interest in his pension plan "as of January 16, 1990." When Mr. Ross retired many years later, the administrator of the pension plan rejected the court's order. Ms. Ross subsequently moved the trial court to approve a new qualified domestic relations order. The court referred the issue to a magistrate, who recommended that it determine Ms. Ross's interest in the pension plan by using the formula set out by the Ohio Supreme Court in *Hoyt v. Hoyt*, 53 Ohio St. 3d 177 (1990). Mr. Ross objected to the magistrate's decision, but the trial court overruled his objections and adopted the decision as its own. Mr. Ross has appealed, assigning as error that the court improperly modified its divorce decree when it entered the new qualified domestic relations order. We reverse because, even though the court correctly determined that

the *Hoyt* formula should apply, it misapplied the formula, which resulted in an improper modification of its decree.

## QUALIFIED DOMESTIC RELATIONS ORDER

{¶2} Mr. Ross's assignment of error is that the trial court incorrectly granted Ms. Ross's motion to approve a new qualified domestic relations order. Specifically, he has argued that the court improperly modified the terms of the divorce decree when it approved the order.

{¶3} According to Mr. Ross's pre-trial statement to the trial court, he began working for the Ford Motor Company on July 23, 1974. He married Ms. Ross a few months later. At the time of the parties' divorce, therefore, his pension contained both separate and marital property. Nevertheless, in its divorce decree, the court awarded Ms. Ross "one-half of [Mr. Ross's] interest [in his pension] as of January 16, 1990." While it appears that the court erred by including Mr. Ross's separate property in its division of his pension, Mr. Ross did not appeal the court's decision. *See Hoyt v. Hoyt*, 53 Ohio St. 3d 177, 183 (1990) ("[T]he trial court erred when it awarded [Ms. Hoyt] a fifty-percent share of the [retirement] plan without explanation as to why nonmarital assets were included in the division of property.").

{¶4} At the time of the divorce, the Rosses submitted a proposed qualified domestic relations order that they believed reflected the court's division of Mr. Ross's pension. The court incorporated the order into its decree. The parties then submitted the order to Ford. Around the time that Mr. Ross began receiving benefits, however, the pension plan administrator determined that the qualified domestic relations order was invalid under federal law. *See* 26 U.S.C. § 414(p). Ms. Ross, therefore, moved the court to adopt a new order. The order that she proposed directed the administrator to pay her 50 percent of Mr. Ross's total accrued benefit as of his retirement date multiplied by a fraction that had the duration of the marriage as the numerator

and Mr. Ross's total employment time as the denominator. Mr. Ross opposed the motion, arguing that Ms. Ross was only entitled to a lump sum consisting of one-half of the value of the pension at the time of the divorce. Following a hearing, a magistrate recommended granting Ms. Ross's motion, and the trial court adopted her decision.

{¶5} This Court has held that "a [domestic relations] court has the power to enforce a property division incorporated into a divorce decree [but] . . . may not modify that property division." *Straw v. Straw*, 9th Dist. No. 04CA008433, 2004-Ohio-4065, ¶ 4. A domestic relations court also "has the power to clarify and construe its original property division so as to effectuate its judgment." *Borzy v. Borzy*, 9th Dist. No. 3185-M, 2001 WL 1545676, *2 (Dec. 5, 2001). The question in this case is whether, in declaring that the pension plan administrator should determine Ms. Ross's interest in Mr. Ross's pension by using a proportionality formula, the trial court improperly modified its decree or merely clarified it.

{¶6} In *Hoyt*, the Ohio Supreme Court identified several ways that a trial court may divide a pension plan "such as an immediate offset or a current assignment of proportionate shares, with either a current distribution or a deferred distribution. A deferred distribution may consist of either a current assignment or a division of the asset at such time that the plan directs distribution based upon the employee's eligibility." *Hoyt v. Hoyt*, 53 Ohio St. 3d 177, 181 (1990). The Supreme Court noted that different approaches would be necessary depending on the circumstances of each case. It also explained that, "[i]n a situation involving vested but unmatured benefits," it would be appropriate to divide the pension proportionately. *Id*. at 182, 183-84.

{¶7} Although the divorce decree awarded Ms. Ross one-half of Mr. Ross's interest in his pension, it did not specify whether she should receive a fixed sum based on the then present

cash value or the theoretical liquidation value of Mr. Ross's interest, a proportionate share of his benefits after his interest vested and matured, or some other award. *See Hoyt v. Hoyt*, 53 Ohio St. 3d 177, 182 (1990) (describing some of a trial court's options in dividing retirement assets). Because the decree did not explain how Ms. Ross was to receive her interest in the pension plan, we conclude that in granting Ms. Ross's motion to approve a new qualified domestic relations order, the court was merely clarifying how Ms. Ross's interest in the plan should be awarded, not modifying its decree.

{¶8} This case is distinguishable from our decision in *George v. George*, 9th Dist. No. 18866, 1998 WL 663221 (Sept. 23, 1998). In that case, the parties' assets were distributed according to a written separation agreement that provided that Victoria George would receive "[o]ne half of [Donald George's] pension through the date of the final hearing." *Id*. at *1. The trial court interpreted the provision to mean that Ms. George would receive a proportionate share of Mr. George's benefits, pre-retirement survivorship protection, and a pro-rata share of cost-of-living adjustments made after Mr. George's retirement. *Id*. at *2. This Court reversed, concluding that the additional terms the trial court inserted into its qualified domestic relations order did "more than just interpret the separation agreement. They materially change the division of the pension." *Id*. at *3. We explained that there was "no evidence that the parties intended to include [the extra] provisions in their agreement." *Id*. We also explained that the evidence "suggest[ed] that the parties did not simply 'forget' to include . . . customary provisions in their separation agreement, but instead chose an alternative method of dividing the pension[.]" *Id*.; *see also Pohl v. Pohl*, 2nd Dist. No. 20001, 2004-Ohio-3790 (involving interpretation of separation agreement); *Cox v. Cox*, 12th Dist. Nos. CA98-04-045, CA98-05-054, 1999 WL 58098, * 4 (Feb. 1, 1999) (same).

{¶9}	Unlike in *George*, Ms. Ross's motion in this case asked the trial court to interpret its own decision regarding the division of Mr. Ross's pension. The court's revised qualified domestic relations order did nothing more than clarify how Ms. Ross is to receive the interest that the court awarded in its decree.

{¶10}	Regarding the values that the trial court used in applying the formula, we noted earlier that the decree awarded Ms. Ross "one-half" of Mr. Ross's pension as of "January 16, 1990." Under the decree, that one-half interest not only included the service credits that Mr. Ross earned during the marriage, but also the service credits that he earned during the few months he worked for Ford before the marriage. When the trial court entered the new qualified domestic relations order, however, it only directed the plan administrator to calculate Ms. Ross's proportionate share based on the service credits Mr. Ross earned during the marriage. Because the court did not have jurisdiction to modify its original award, which included Mr. Ross's pre-marriage credits, we conclude that the court must amend its revised qualified domestic relations order to also include the pre-marriage credits. *Straw v. Straw*, 9th Dist. No. 04CA008433, 2004-Ohio-4065, ¶ 4 (noting that, under Section 3105.17.1 of the Ohio Revised Code, a trial court does not have authority to modify its property division). The number of months between the time Mr. Ross began working for Ford in July 1974 and the date of the divorce hearing in January 1990 was 186. Accordingly, this case must be reversed and remanded to the trial court so that it can direct the pension plan administrator to use 186 months as the numerator in its calculation of Ms. Ross's share of Mr. Ross's pension. Mr. Ross's assignment of error is overruled in part and sustained in part.

CONCLUSION

**{¶11}**  The trial court did not modify its divorce decree when it specified how Ms. Ross's share of Mr. Ross's pension plan should be determined.  It erred, however, when it calculated the number of months that should be used as the numerator in the formula.  The judgment of the Lorain County Common Pleas Court, Domestic Relations Division, is affirmed in part and reversed in part and this matter is remanded for the court to correct its order in accordance with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, J.
CONCURS.

MOORE, P. J.
DISSENTING.

{¶12} I would reverse the judgment of the trial court because it improperly modified the parties' original divorce decree by ordering that a coverture fraction be used to calculate Ms. Ross' one-half interest in Mr. Ross' pension plan.

{¶13} The issue here hinges on whether the parties' divorce decree contained ambiguous language with regard to the division of Mr. Ross' pension plan. "An ambiguity is defined as doubtfulness or uncertainty; language which is open to various interpretations or having a double meaning; language which is obscure or equivocal." *Caldwell v. State*, 115 Ohio St. 458, 460 (1926). The pertinent provision in the parties' divorce decree states:

> [Wife] shall receive a [QDRO] in [Husband's] Ford Motor Pension Plan *equal to one-half of [Husband's] interest as of January 16, 1990* as shown in the [QDRO] attached hereto and incorporated herein by reference and all survivorship interest in said plan.

(Emphasis added.) In addition, the original QDRO provides that "[b]enefits from this Plan shall be payable to the Alternate Payee [Wife] equal to one-half of the Participant's [Husband] interest as of January 16, 1990."

{¶14} It is well-settled that "[p]ension or retirement benefits earned during the course of a marriage are marital assets and a factor to be considered in the division of property." *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, ¶ 5. "A QDRO 'implements a trial court's decision of how [retirement benefits are] to be divided incident to divorce or dissolution.'" *Id* at ¶ 7. As the majority correctly indicates, "[w]hile a court has the power to enforce a property division incorporated into a divorce decree, * * *, a trial court may not modify that property

division." *Straw,* 2004-Ohio-4065, at ¶ 4. However, a trial court also "has the power to clarify and construe its original property division so as to effectuate its judgment." *Borzy v. Borzy*, 9th Dist. No. 3185-M, 2001 WL 1545676,*2 (Dec. 5, 2001); *see also* R.C. 3105.171(I).

{¶15} As such, "[w]here there is good faith confusion over the requirements of the dissolution decree, a court has the power to enforce its decree, to hear the matter, clarify the confusion, and resolve the dispute." *Bond v. Bond,* 69 Ohio App.3d 225, 228 (9th Dist.1990). "The [trial] court has broad discretion in clarifying *ambiguous* language by considering not only the intent of the parties but the equities involved, and a reviewing court will not reverse its interpretive decision absent an abuse of discretion." (Emphasis added.) *Borzy* at *2. Further, "[a]n abuse of discretion connotes more than an error of law or judgment, but implies that the judgment can be characterized as unreasonable, arbitrary or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶16} In *George v. George*, 9th Dist. No. 18866, 1998 WL 663221, *1 (Sept. 23, 1998), we reversed the decision of the trial court where it modified the parties' separation agreement with regard to a QDRO. The parties could not agree upon the terms of their QDRO, and the wife moved the trial court for an order interpreting their separation agreement. *Id.* The parties' separation agreement stated, in relevant part, that, "[the husband] will enter into a [QDRO] for one half of his pension through the date of the final hearing." The trial court interpreted this provision by adding, among other things, "a calculation of the value of the pension using a 'coverture fraction' formula[.]" *Id.* at *2. We reversed, stating:

> We hold that the plain language of the provision at issue requires [the husband] to enter into a QDRO for one half of the value of his pension as it existed on November 22, 1994, the date of the final hearing. [The wife] is entitled to exactly one-half of whatever interest [the husband] had in the pension as of November 22, 1994. [The wife] is not entitled to *any* interest in the pension accruing after November 22, 1994. * * *

*Id*. at *3.  (Emphasis sic.)

{¶17}  The majority attempts to distinguish the present case from *George* by pointing out that *George* was uncontested, while this matter was contested.  In *George*, the parties' assets were distributed according to a separation agreement.  Whereas, here, the parties' assets were distributed by the trial court, according to a divorce decree, with no input from the parties.  As such, the majority believes that because the trial court is interpreting *its own decision* regarding the division of Mr. Ross' pension, rather than an agreement between the parties, the "revised qualified domestic relations order did nothing more than clarify how Ms. Ross is to receive the interest that the court awarded in its decree."

{¶18}  However, as stated above, we look to the plain language of the provision *itself* in order to determine whether it is ambiguous, and, thus, in need of clarification. Therefore, I see no distinction between whether the provision was written by the trial court or the parties. If the provision is not ambiguous, it cannot be clarified.

{¶19}  In this case, similar to *George*, the divorce decree and the original QDRO unambiguously awarded Ms. Ross benefits equal to one-half of Mr. Ross' interest in the pension as of January 16, 1990.  Although it could have done so, the trial court did not include any language regarding the use of a coverture fraction to calculate the exact percentage of Ms. Ross' future benefit.  Rather, the trial court merely inserted January 16, 1990 as the date certain for the division of one-half of the value of the pension.  As such, a QDRO consistent with the divorce decree would determine the value of Mr. Ross' interest in the pension as of January 16, 1990, divide that number in half, and award that percentage to Ms. Ross.  Given the obvious and unambiguous language in the divorce decree and original QDRO, the trial court's adoption of the

April 3, 2009 QDRO constitutes a modification and, pursuant to the precedent of this Court, the April 3, 2009 QDRO should be rendered void.

{¶20} Accordingly, I respectfully dissent from the majority's decision and would reverse the judgment of the trial court because, in ordering the utilization of the coverture fraction, it improperly modified the parties' divorce decree.

APPEARANCES:

SARAH A. NATION, Attorney at Law, for Appellant.

SAM R. BRADLEY, Attorney at Law, for Appellee.