[Cite as *Marron v. Marron*, 2014-Ohio-2121.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| SANDRA L. MARRON, | : | |
| Plaintiff-Appellee/Cross-Appellant, | : | CASE NOS. CA2013-11-109 CA2013-11-113 |
| | : | O P I N I O N 5/19/2014 |
| - vs - | : | |
| | : | |
| MICHAEL G. MARRON, | : | |
| Defendant-Appellant/Cross-Appellee. | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 12DR35329

Phyllis G.Bossin & Associates, LPA, Phyllis G. Bossin, Shannon F. Eckner, 105 East Fourth Street, Suite 1200, Cincinnati, Ohio 45202, for appellee/cross-appellant

Cors & Bassett, LLC, Michael L. Gay, 537 East Pete Rose Way, Suite 400, Cincinnati, Ohio 45202-3502, for appellant/cross-appellee

**PIPER, J.**

{¶ 1} Appellant/cross-appellee, Michael G. Marron (Husband), appeals a divorce decree of the Warren County Court of Common Pleas, Domestic Relations Division. For the reasons stated below, we affirm in part, reverse and vacate in part, and remand the matter to the trial court.

{¶ 2} Husband and appellee/cross-appellant, Sandra L. Marron (Wife), were married on May 4, 1996. The couple has four minor children born during the marriage. During most of the marriage, Wife stayed at home and took care of the children and in December 2012, Wife returned to the work force as a part-time substitute teacher. Husband works as a manufacturer's representative for Apex Sales Agency, selling engineering metal and plastic products. Husband's employment requires him to travel and entertain certain clients for which he incurs a substantial amount of business expenses. Apex is owned by Husband and his brother. Husband is employed as an independent contractor through Apex and operates through Creevy Lake Limited, a corporation owned by Husband and Wife. Husband is also a shareholder of three family-owned corporations: Marron Family Partnership, Hassett Family Partnership, and Hassett Properties.

{¶ 3} All five of the corporations in which Husband owns an interest, Apex, Creevy Lake, Marron Family Partnership, Hassett Family Partnership, and Hassett Properties, are "S-Corporations." S-Corporations do not pay corporate income tax but instead the shareholders are taxed on the corporate earnings as if the income was their personal earnings regardless of whether those corporate earnings are distributed or retained by the company. These earnings are then reported on a K-1 tax form and commonly referred to as "K-1 income." In 2012, the K-1 income from Apex, Marron Family Partnership, Hassett Family Partnership, and Hassett Properties was retained and Husband only received a distribution intended to cover the tax consequences of this K-1 income. The K-1 income from Creevy Lake was distributed to Husband.

{¶ 4} On February 10, 2012, Wife filed for divorce. The parties entered into an agreed entry that addressed many of the property issues in the divorce. A trial was held regarding Husband's spousal and child support obligations. At issue during the trial was the calculation of Husband's income and Wife's employment status. Wife and Husband

presented dueling experts regarding Husband's income.

{¶ 5} On August 28, 2013, the trial court issued its decision and agreed with Wife's expert that Husband's income was $271,000. This amount included Husband's salary, business expenses that were personal in nature, distributed K-1 income from Creevy Lake, and retained K-1 income from the other businesses. The court also found that if Wife was a full-time teacher she would earn $35,000 to $40,000 annually. The court ordered Husband to pay Wife spousal support is the amount of $6,000 per month for five years and $1,510.16 per month of child support.[1] In the child support worksheet used to determine Husband's child support obligation, the court did not include the "marginal, out of pocket costs, necessary to provide health insurance for the children." The court also ordered the parties to divide the household goods as set forth in Wife's exhibit.

{¶ 6} After the court's decision, Husband moved to reopen the evidence to allow him to introduce evidence regarding the marginal cost of health insurance. Husband's motion also requested the court to clarify its decision regarding the division of household goods. The trial court overruled Husband's motion. On October 29, 2013, the trial court issued the judgment entry and final decree of divorce. Husband now appeals asserting two assignments of error. Wife cross-appeals and asserts two cross-assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN FINDING THAT HUSBAND'S INCOME FOR COMPUTATION OF SPOUSAL SUPPORT AND CHILD SUPPORT WAS $271,000.

{¶ 9} Husband argues that the court abused its discretion in determining his annual

---

1. The spousal support amount does not include the two percent processing fee. The child support amount is the amount when private health insurance is being provided and does not include the two percent processing charge.

income as $271,000 for child and spousal support purposes. Specifically, Husband maintains that the trial court included in his income, "phantom income" from the S-corporations he owns. Husband maintains that the K-1 income retained by the corporations should not be included in his income because he did not receive it, he had no legal right to demand it, and he had never received any cash distribution from these companies with the exception of a tax draw in later years.

{¶ 10} "A trial court's decision in matters concerning child support shall be reviewed under an abuse of discretion standard." *Combs v. Walsh*, 12th Dist. Butler No. CA2005-07-198, 2006-Ohio-7026, ¶ 16, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). The same standard applies in our review of a trial's court's spousal support award. *Gregory v. Kottman-Gregory*, 12th Dist. Madison Nos. CA2004-11-039, CA2004-11-041, 2005-Ohio-6558, ¶ 9. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 11} In this case, the trial court was required to determine both parties' annual income for purposes of computing spousal support and child support obligations. *See* R.C. 3105.18 and R.C. 3119.02. R.C. 3105.18(C)(1)(a) directs domestic relations courts to consider "the income of the parties, from all sources," in determining spousal support.

{¶ 12} For child support purposes, "income" for a parent who is employed to full capacity is defined as "the gross income of the parent." R.C. 3119.01(C)(5). "Gross income" is

> the total of *all earned and unearned income from all sources during a calendar year*, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in [R.C. 3119.05(D)]; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest * * * and all other sources of income. 'Gross

income' includes * * * *self-generated income; and potential cash flow from any source.*

(Emphasis added.) R.C. 3119.01(C)(7).

"Self-generated" income is defined as "gross receipts received by a parent from * * * [a] closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts."  R.C. 3119.01(C)(13).

{¶ 13} The Ninth District has included retained K-1 earnings in the calculation of a spouse's income for spousal and child support purposes.  *Poitinger v. Poitinger*, 9th Dist. Summit No. Civ. A. 22240, 2005-Ohio-2680.  In *Poitinger*, the obligor spouse argued the retained K-1 income was "phantom income" because he did not receive a cash distribution from the income.  *Id.* at ¶ 18.  The court disagreed and noted that R.C. 3105.18 is silent as to whether "phantom income" should be included in spousal support.  *Id.*  Additionally, the court reasoned, "claims such as Appellant's require courts to make sure that the support obligor is not merely attempting to manipulate his income and wrongfully shelter a portion of it from his support obligations."  *Id.  See Ulliman v. Ulliman*, 2d Dist. Montgomery No. 22560, 2008-Ohio-3876, ¶ 14.

{¶ 14} Additionally, this court has noted that courts must carefully examine corporate expenses and deductions as related to possible personal income when a corporate proprietorship is involved in a support case.  *Hayman v. Hayman*, 12th Dist. Butler No. CA2001-10-250, 2003-Ohio-76, ¶ 12.  A review of all circumstances must be conducted "to determine if the individual proprietor has taken or concealed anything of value from his corporation which should be added to his personal income."  *Id.  See Radford v. Radford*, 8th Dist. Cuyahoga Nos. 96267 and 96445, 2011-Ohio-6263, ¶ 27-28.

{¶ 15} At trial, each party presented expert witnesses regarding Husband's K-1 income.  Terry Yoho, a Certified Public Accountant (CPA) and an expert in forensic

accounting, testified that she investigated Husband's income. Yoho explained that in conducting her investigation she used forensic accounting methodology and relied on source documents provided by Husband and Husband's accountant as well as an interview with Husband's accountant. Based upon Yoho's investigation and analysis, she determined within a reasonable degree of accounting certainty that Husband's annual income is $271,000.[2] Her computation of Husband's income included Husband's salary, commissions, K-1 income, and discretionary nonbusiness expenses that Yoho added back to Husband's income.

{¶ 16} In the computation of Husband's annual income, Yoho included the K-1 income attributable to Husband even if the corporation retained the income. In 2012, Husband received: 1.) $1,997 of K-1 income from Marron Family Partnership; 2.) $65,791 of K-1 income from Hassett Family Partnership; and 3.) $2,370 of K-1 income through Hassett Properties. While Husband was taxed on this K-1 income, Husband only received $23,073 as a distribution. Yoho explained that she included the entire amount of K-1 income from these businesses in Husband's income because while Husband did not receive the income as cash, the income was invested in the companies Husband partially owned and therefore increased his wealth.

{¶ 17} Yoho also included K-1 income Husband received through his ownership interest of Apex Sales Agency. In 2012, Husband received $35,751 of K-1 income from Apex. Yoho included all of the K-1 income in her computation of Husband's income even though the only distribution Husband received from Apex was $12,200. Yoho also disagreed with Husband's characterizations that the distributions he received from Hassett Family Partnership and Apex were required to cover the tax consequences of the K-1 income. Yoho

---

2. This amount includes the distributed K-1 income to wife through her 10 percent ownership interest in Creevy Lake. Because wife's ownership interest is now allocated to Husband and Husband is now the 100 percent owner of Creevy Lake.

explained that the cash distribution was approximately $15,500 over what was required to pay the tax obligations resulting from the K-1 income.

{¶ 18} Martin J. Wise, a CPA who has been the accountant for Husband and Husband's family for 18 years, testified regarding his determination of Husband's income. Wise explained that in his investigation of Husband's income, he relied on the information provided to him by the corporations' management and Husband and did not audit any underlying documents or request source documents. Wise is not a certified fraud examiner and he does not do forensic fraud investigations. Based upon his investigation, Wise determined Husband's income to be $123,158. In computing Husband's income, Wise did not include the retained K-1 income from Apex, Marron Family Partnership, Hassett Family Partnership, and Hassett Properties.

{¶ 19} Wise explained that he did not include the retained K-1 income because Husband did not receive this money as cash, had no managerial control over these companies, and had no ability to demand distribution of these funds. The three companies which Husband and his siblings were shareholders, Marron Family Partnership, Hassett Family Partnership, and Hassett Properties, were traditionally controlled by Husband's father who was a "heavy-handed" majority owner "who like to take the profits and reinvest into them as far as growth of the businesses and hope that the businesses would grow in economic value." Wise explained that this business philosophy continues with the family-owned businesses.

{¶ 20} Wise explained that the $23,073 from Hassett Family Partnership and $12,200 from Apex Husband received as a cash distribution were also not included in his annual income. Husband received these distributions only to cover the tax liability incurred as a result of the K-1 income from Hassett Family Partnership and Apex. Wise also testified that Apex is "in a negative equity situation" because it lost half a million dollars in a lawsuit

regarding an employment relationship about eight years ago. The lawsuit related to Husband's former brother-in-law who divorced Husband's sister. The brother-in-law was an employee of Apex.

{¶ 21} Lastly, Husband and Wife testified regarding Husband's income. Husband testified regarding the cash distributions to cover the tax liabilities associated with the K-1 income. He explained that he did not initially receive distributions of cash to cover the tax implications. However, he discussed the matter with Wise and his father and was able to convince his father to make distributions to cover the tax implications associated with the K-1 income. Wife also testified regarding the structure of the companies and stated that the companies were arranged to reduce support obligations in the event of a divorce. Wife stated that Husband told her that the family had learned from the divorce of his siblings and that "if [Wife] ever left him [Wife] would leave with nothing, that [Husband] would put [Wife] on the street."

{¶ 22} The trial court did not abuse its discretion in including the retained K-1 earnings in Husband's annual income and determining his annual income as $271,000. The court's finding that Yoho is more credible was supported by the fact that Yoho is an expert in forensic accounting who relied on source documents in her investigation and had not been previously employed by the Marron family as their accountant. *See Tokar v. Tokar*, 8th Dist. Cuyahoga No. 89522, 2008-Ohio-6467, ¶ 21. Additionally, whether or not Husband received a cash distribution from the K-1 income, the retained K-1 income increased Husband's wealth through his ownership interest in the companies. There was evidence that Husband exercised significant control over the companies. Husband was able to convince his father to make distributions from the family-owned corporations to cover the tax liabilities associated with the K-1 income contrary to the previous custom. The "tax distributions" were significantly larger than taxes due on the K-1 income. Further, Wife testified that Husband's

family had shaped the companies to minimize a spouse's support obligation in a divorce. For the reasons stated above, the court did not err in its calculation of husband's annual income.

{¶ 23} Husband's first assignment of error is overruled.

{¶ 24} Assignment of Error No. 2:

{¶ 25} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN DENYING HIS MOTION TO EXTEND ENTRY DATE, FOR AN ORDER PERMITTING A BRIEF REOPENING OF THE EVIDENCE, AND FOR CLARIFICATION OF THE COURT'S DECISION.

{¶ 26} Husband argues two issues in his second assignment of error. First, Husband maintains that the court erred in refusing to reopen the evidence to allow him to submit documentation on the marginal cost of health insurance for the minor children. Second, Husband contends that the court abused its discretion "in ruling on an issue not litigated by the parties at the court's direction." Specifically, Husband challenges the court's use of Wife's list to divide the personal property between the parties when the court directed the parties to submit a mutually agreed upon master list to divide the property

## Health Insurance

{¶ 27} R.C. 3119.02 provides that, "in any action in which a court child support order is issued * * * the court or agency shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." The child support computation worksheet provides for an adjustment to a parent's child support obligation for "[m]arginal, out of pocket costs, necessary to provide for health insurance for the children who are subject of this order." R.C. 3119.023.[3]

---

3. The marginal out-of-pocket cost of health insurance is defined as the "contributing cost of private family health insurance, minus the contributing cost of private single health insurance, divided by the total number of

**{¶ 28}** A parent is entitled to a credit for health insurance costs and childcare expenses incurred by the parent when calculating child support. *Carpenter v. Carpenter*, 7th Dist. Noble No. 09 NO 367, 2010-Ohio-6601. It is "error to exclude health insurance payments for children from the child support computation worksheet." *Harkey v. Harkey*, 11th Dist. Lake No. 2006-L-273, 2008-Ohio-1027, ¶ 114, quoting *Wachter v. Wachter*, 9th Dist. Summit No. 23170, 2006-Ohio-6970, ¶ 8.

**{¶ 29}** The decision whether to reopen a case is within the sound discretion of the trial court. *Souders v. Hyer*, 12th Dist. Fayette No. CA97-05-013, 1997 WL 570699, *2 (Sept. 15, 1997), citing *Ketcham v. Miller*, 104 Ohio St. 372, 378 (1922). The trial court's decision whether to reopen the case will not be disturbed on appeal absent an abuse of discretion. *Souders* at *2.

**{¶ 30}** In the case at bar, the trial court completed the child support worksheet to determine Husband's child support obligation. However, the court did not include the "marginal, out of pocket costs, necessary to provide health insurance for the children." In response to the court's decision, Husband filed a motion requesting a number of things, including "an order permitting a brief reopening of the evidence" to allow Husband to introduce evidence regarding the marginal cost of health insurance. Attached to Husband's motion was a document indicating the cost of providing health insurance for Husband's children. The trial court overruled this motion.

**{¶ 31}** The trial court did not abuse its discretion in denying Husband's motion to allow him to present evidence regarding the cost of health insurance. Husband had a full and fair opportunity to present his case, including the marginal cost of health insurance, before the trial court. Husband was prejudiced by nothing other than his own failure to present evidence

---

dependents covered by the plan, including the children subject of the support order, times the number of children subject of the support order." R.C. 3119.023.

regarding the cost of health insurance as he was represented by counsel throughout the proceedings and had access to evidence regarding the cost of health insurance.

### Personal Property

{¶ 32} Husband also argues that the court erred in denying his motion to clarify the divorce decree regarding the division of personal property. A trial court has jurisdiction to enforce divorce decrees and to clarify matters in the divorce decree. R.C. 3105.65(B); *Bell v. Bell*, 3d Dist. Hancock No. 5-04-34, 2005-Ohio-421, ¶ 11. "Where there is good faith confusion over the requirements of the dissolution decree, a court has the power to enforce its decree, to hear the matter, clarify the confusion, and resolve the dispute." *Straw v. Straw*, 9th Dist. Lorain No. 04CA008433, 2004-Ohio-4065, ¶ 4, quoting *Bond v. Bond*, 69 Ohio App.3d 225, 228 (9th Dist.1990). The trial court "has broad discretion in clarifying ambiguous language by considering not only the intent of the parties but the equities involved." *Id.* This court reviews a trial court's interpretation of ambiguous language in a divorce decree under an abuse of discretion standard. *Bell* at ¶ 11.

{¶ 33} The failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal. *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 9, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). The fundamental rule is that an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected. *Williams* at ¶ 9.

{¶ 34} Prior to trial, Husband and Wife submitted an agreed entry covering several aspects of the divorce, including the division of personal property between the parties. The entry stated that the property shall be divided by the parties pursuant to a master list and a magistrate shall mediate the division of the personal property.

{¶ 35} At the beginning of trial, the court addressed the personal property provision in the agreed entry. The court indicated that it does not mediate personal property disputes between parties and suggested that the parties create a list of personal property from which Husband and Wife can alternatively select items. The court then inquired whether a master list of personal property had been developed. Wife's counsel stated that they had created a list and that Husband had not reviewed it. Wife's counsel then stated that they can email the list during trial and print it out. The court stated that "at some time at lunch here…sometime at lunch here today get [Husband] a list."

{¶ 36} During Wife's testimony, she introduced Exhibit 33, which was a list of the household items of the parties and acknowledged that Husband and his counsel were seeing the list for the first time. Husband's counsel did not object to the admission of this exhibit nor did he cross-examine Wife regarding this list.

{¶ 37} In its decision, the trial court stated that "the parties will divide household goods set forth in Exhibit 33 by alternative selection." Husband moved to clarify the court's decision arguing that the decision contradicted what the court had instructed the parties at trial. Specifically, Husband stated that the court "failed to recall his directive to the parties before the hearing, and ordered the personal property to be divided based upon Wife's exhibit."

{¶ 38} The trial court did not abuse its discretion in denying Husband's motion to clarify the divorce decree. The court's decision was not inconsistent with what it told the parties at trial. Despite Husband's assertions, the court only stated to the parties that it needed to have a master list of personal property and suggested that Wife give a copy of her list to Husband during the lunch break. While Wife did not give Husband a copy of the list until her direct examination, she acknowledged this in her testimony and Husband failed to object or otherwise cross-examine Wife regarding the list. Husband's failure to object indicated his acquiescence to the list and waived any potential error regarding the incorporation of this list

into the divorce decree.

{¶ 39} Husband's second assignment of error is overruled.

{¶ 40} Cross-Assignment of Error No. 1:

{¶ 41} THE TRIAL COURT ERRED TO THE PREJUDICE OF CROSS APPELLANT (WIFE) BY IMPUTING HER WITH $40,000 OF ANNUAL INCOME FOR PURPOSES OF DETERMINING HUSBAND'S SPOUSAL SUPPORT AND CHILD SUPPORT OBLIGATION AND THE ALLOCATION OF CHILD-RELATED EXPENSES BETWEEN THE PARTIES WHEN WIFE WAS NOT DETERMINED TO BE "VOLUNTARILY UNDEREMPLOYED" OR "VOLUNTARILY UNEMPLOYED" AND THERE WAS NO EVIDENCE THAT WIFE COULD PRESENTLY EARN $40,000 OF ANNUAL INCOME.

{¶ 42} Wife argues the court erred by imputing $40,000 of annual income to her for child support and spousal support purposes. Wife maintains that the court could not impute income to her without making an express finding that she was "voluntarily underemployed" or "voluntarily unemployed." Wife also contends that the imputation of $40,000 was in error because she is not voluntarily underemployed and there was no evidence about the average income of teachers to support the amount of income imputed to Wife.

{¶ 43} The decision to impute income for purposes of spousal support is within the discretion of the trial court and shall not be overruled absent an abuse of discretion. *Corwin v. Corwin*, 12th Dist. Warren Nos. CA2013-01-005 and CA2013-02-012, 2013-Ohio-3996, ¶ 63, citing *Havanec v. Havanec*, 10th Dist. Franklin No. 08AP-465, 2008-Ohio-6966, ¶ 23. "Whether a parent is 'voluntarily underemployed' within the meaning of R.C. 3119.01 is a matter to be determined by the trial court based upon the facts and circumstances of each case." *Corwin* at ¶ 73, citing *Rock v. Cabral*, 67 Ohio St.3d 108 (1993), syllabus. The trial court's determination on this issue will not be disturbed on appeal absent an abuse of

discretion. *Corwin* at ¶ 73.

{¶ 44} The trial court was required to determine both parties' annual income for purposes of computing spousal support and child support obligations. *See* R.C. 3105.18 and R.C. 3119.02. The statutory section on spousal support does not expressly address imputing income to a spouse who is voluntarily unemployed or underemployed. *Justice v. Justice*, 12th Dist. Warren No. CA2006-11-134, 2007-Ohio-5186, ¶ 17. "However, this court and others have approved a trial court's imputation of income for purposes of determining spousal support." *Id.*

{¶ 45} In regards to child support, "income," consists of the sum of the gross income of the parent and any "potential income" of the parent if voluntarily underemployed or voluntarily unemployed. R.C. 3119.01(C)(5)(b). Potential income includes imputed income that a trial court determines the parent would have earned if fully employed based upon the factors set forth in R.C. 3119.01(C)(11)(a). R.C. 3119.01(C)(11)(a). Factors include the parties' prior employment experience, education, employment availability and local wage rates. *Id.* A parent who claims that the other parent is voluntarily unemployed bears the burden of proof on that issue. *McLaughlin v. Kessler*, 12th Dist. Fayette No. CA2011-09-021, 2012-Ohio-3317, ¶ 14.

{¶ 46} Before a trial court may impute income to a parent for child support purposes, it must first find that the parent is voluntarily unemployed or underemployed. R.C. 3119.01(C)(11). *Justice* at ¶ 9. Nevertheless, an implicit finding of voluntary unemployment or unemployment is sufficient to satisfy this requirement. *Corwin*, 2013-Ohio-3996 at ¶ 76. *See Drummer v. Drummer*, 3d Dist. Putnam No. 12-11-10, 2012-Ohio-3064, ¶ 27.

{¶ 47} During the hearing, Wife explained that she holds a bachelor's degree in elementary education and worked in this field prior to the marriage. However, for the majority

- 14 -

of the parties' marriage, Wife stayed at home and took care of the couple's four children. In December 2012, Wife returned to the work force as a substitute teacher and attended classes so that she could renew her teaching certificate. Wife explained that she worked on her coursework in between the children's activities and substitute teaching and she often worked late into the night. At the time of the hearing, Wife had renewed her teaching certificate and was a substitute teacher for Mason City Schools. Wife held a long-term substitute position that was scheduled to continue to October 2013. Wife explained that as a long-term substitute teacher, she works full-time but does not receive benefits. As a regular substitute teacher, Wife earns $75 a day and as a long-term substitute teacher, Wife receives $95 a day after ten days. Wife also testified the she has applied to over 26 different schools for a full-time teaching position. Wife stated that she has not been offered a permanent teaching position and she is "actively searching and building my resume."

**{¶ 48}** In its decision, the court discussed Wife's age, health, education, and employment experience. The court noted that Wife is currently employed as a long-term substitute teacher and the position ends October 2013. The court then stated,

> Wife impresses this Court as a competent individual with the personality and desire to obtain a fulltime teaching job very quickly. Again no information was provided, but, given the teacher salaries in the area, the Court assumes that Wife will earn $35,000 to $40,000/year in the very near future.

In the child support worksheet, the court found Wife's annual income to be $40,000.

**{¶ 49}** While the trial court did not expressly find Wife to be voluntarily underemployed, the court's decision shows that it implicitly made this finding. The court discussed several of the imputation-of-income factors, including Wife's age, education, employment experience, and earning capability. The court also discussed Wife's current part-time employment and desire to seek full-time employment. The court then imputed to Wife an annual salary that is much higher than her current income. Therefore, it is clear that the court implicitly found

Wife to be voluntarily underemployed.

{¶ 50} However, we find that the trial court abused its discretion in finding Wife voluntarily underemployed. Husband presented insufficient evidence during the hearing to prove that Wife was voluntarily underemployed. In fact, the court's finding of Wife's voluntary underemployment is in direct conflict with Wife's uncontroverted testimony as to her efforts to obtain work. Husband offered no testimony or evidence at the hearing to refute Wife's testimony and failed to elicit any testimony from Wife on cross-examination that established she was not seeking full-time employment or that she had turned down full-time employment. Instead, Wife's testimony clearly established that she has made every reasonable effort to obtain a full-time teaching position by the date of the hearing. Additionally, we note that there was no evidence that supported using $40,000 to impute income for a teacher in the Mason area. Therefore, the trial court abused its discretion in finding that Wife was voluntarily underemployed and imputing $40,000 of annual income to her.[4]

{¶ 51} Wife's first cross-assignment of error is sustained.

{¶ 52} Cross-Assignment of Error No. 2:

{¶ 53} THE TRIAL COURT ERRED TO THE PREJUDICE OF CROSS APPELLANT (WIFE) BY MAKING SPOUSAL SUPPORT TERMINABLE UPON HUSBAND'S DEATH AND THEREBY EFFECTIVELY NULLIFYING THE PARTIES' AGREEMENT THAT HUSBAND MUST SECURE HIS SPOUSAL SUPPORT OBLIGATION WITH LIFE INSURANCE.

{¶ 54} Wife argues that the court erred when it made Husband's spousal support obligation terminable upon his death. Wife contends that the trial court abused its discretion when it ignored the parties' agreed entry that required Husband's spousal support to be

---

4. We note that the parties may always move to modify the child support and spousal support obligations if wife's actions later demonstrate that she is voluntarily underemployed and the standards for modifying Husband's supports obligations are met. *See* R.C. 3119.79; R.C. 3105.18(E)(1).

secured by life insurance and instead made conflicting statements regarding whether spousal support should terminate upon either party's death or whether it should be secured by life insurance.

{¶ 55} The agreed entry entered into by the parties provided, "Husband shall name Wife as beneficiary of sufficient life insurance to secure his spousal support obligation that he has." However, the trial court's decision stated Husband's "spousal support shall terminate upon the death of either party * * *." The judgment entry and decree of divorce reflected that,

> The Court further finds that both parties have acknowledged under oath that they have voluntarily entered into an Agreed Entry * * * which addressed property issues and some aspects of child support and spousal support * * * *that Husband's spousal support obligation would be secured by life insurance* * * * The Court finds that the terms of the Agreed Entry entered into between the parties is fair and equitable and hereby approves it. * * *

(Emphasis added.)

The judgment entry also stated, "[Husband's] spousal support shall continue for a period of five years; provided, however, that it shall terminate earlier upon Wife's death * * *, or upon Husband's death ~~so long as his remaining obligation has been secured by life insurance as ordered below~~."[5]

{¶ 56} A reviewing court may modify or reverse an award of spousal support only if it finds that the trial court abused its discretion. *Gregory*, 2005-Ohio-6558 at ¶ 9. R.C. 3105.18 governs spousal support and provides that, "an award of spousal support made under this section shall terminate upon the death of either party, *unless the order containing the award expressly provides otherwise*." (Emphasis added.) R.C. 3105.18(B). When an obligor of spousal support is required to secure his support obligation with life insurance, the spousal support continues after the death of the obligor. *Waller v. Waller*, 163 Ohio App.3d 303,

---

5. The crossed-out portion is initialed by the trial court judge.

2005-Ohio-4891, ¶ 87 (7th Dist.). Therefore, a trial court can require that spousal support be secured with life insurance but the court must comply with the requirements of R.C. 3105.18(B) and "the order must 'expressly provide' that spousal support shall continue beyond the obligor's death." *Guenther v. Guenther*, 12th Dist. Butler No. CA2001-04-072, 2002 WL 130247, *4 (Feb. 4, 2002).

{¶ 57} When a trial court order provides that *both* an obligor's death shall terminate the spousal support award but also that life insurance shall secure the obligor's support obligation, the life insurance provision must be vacated. *Id. E.g., Faidley v. Faidley*, 9th Dist. Wayne No. 11CA0005, 2012-Ohio-1670, ¶ 17. Due to the requirements of R.C. 3105.18(B) that a court must expressly provide that the spousal support award shall extend beyond the death of either party, requiring spousal support to terminate upon the obligor's death but also be secured by life insurance "is unreasonable and inappropriate." *Sutmoller v. Sutmoller*, 12th Dist. Warren No. CA2011-03-020, 2011-Ohio-5450, ¶ 15, overruled in part by *Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106. *But see Waller v. Waller*, 163 Ohio App.3d 303, 2005-Ohio-4891 (7th Dist.) (remand for further clarification when spousal support terminates upon death but is also secured by life insurance).

{¶ 58} In the present case, the trial court ordered Husband's spousal support to terminate upon his death. Accordingly, that portion of the divorce decree ordering Husband to maintain life insurance in order to secure his spousal support obligation is unreasonable and inappropriate and must be vacated. Other facts also indicate that the trial court's intention was to terminate the support upon Husband's death including the numerous provisions in the decree providing for the termination of support upon Husband's death and the court's removal of a provision that required the support to be secured by life insurance. Wife's attorney also prepared the divorce decree that provided for the life insurance requirement.

**{¶ 59}** Additionally, the trial court was not required to adopt the parties' agreed entry requiring Husband to secure his spousal support obligation by life insurance. Where parties reach a settlement agreement, the agreement "constitutes a binding contract and the trial court may properly sign a judgment entry reflecting the settlement agreement." *Booth v. Booth*, 11th Dist. Portage No. 2002-P-0099, 2004-Ohio-524, ¶ 6, citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36 (1972), paragraph two of the syllabus. Although binding on the parties, a settlement agreement is not binding on the court, which has the discretion to adopt the agreement, reject the agreement, or adopt portions of the agreement while ruling separately on other issues. *In re Z.H.*, 7th Dist. Mahoning No. 12 MA 27, 2013-Ohio-1278. *See also Waddell v. Waddell*, 12th Dist. Butler No. CA96-03-056, 1996 WL 723551, *1 (Dec. 16, 1996). Therefore the trial court did not abuse its discretion in failing to abide by all the terms of the parties' agreed entry.

**{¶ 60}** Therefore, we agree with Wife to the extent that the trial court erred when it made Husband's spousal support obligation terminable upon his death and required Husband to secure the spousal support with life insurance. However, we disagree with Wife that the trial court was required to follow the parties' agreed entry that required Husband to secure his spousal support with life insurance. Instead, because the trial court's order did not expressly state that spousal support shall continue beyond Husband's death, the provision requiring Husband to secure his support with life insurance is in error and must be vacated. Thus, we overrule Wife's second cross-assignment of error.

**{¶ 61}** We hereby reverse the trial court's finding that Wife was voluntarily underemployed and vacate the $40,000 of imputed income to Wife and remand for recalculation of Wife's income for purposes of determining spousal support and child support obligations. We also vacate the trial court's order requiring Husband to secure his spousal support obligation by maintaining a life insurance policy. In all other aspects, the trial court

judgment is affirmed.  The judgment of the trial court is affirmed in part, reversed and vacated in part, and remanded for further proceedings.

RINGLAND, P.J., and M. POWELL, J., concur.