[Cite as *Hurst v. Hurst*, 2014-Ohio-4762.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| JEFFREY HURST, | : | CASE NO.  CA2013-10-100 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>10/27/2014 |
| - vs - | : | |
| | : | |
| SHEILA HURST n.k.a. SILVA, | : | |
| Defendant-Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 07DR31257

Jason A. Showen, 324 East Warren Street, Lebanon, Ohio 45036, for plaintiff-appellee

Penick & Deters, Bryan K. Penick, 1800 Lyons Road, Dayton, Ohio 45458, for defendant-appellant

**M. POWELL, J.**

{¶ 1}  Defendant-appellant, Sheila Hurst (Mother), appeals a decision in the Warren County Court of Common Pleas, Domestic Relations Division.  For the reasons detailed below, we affirm the judgment of the trial court.

{¶ 2}  Mother and plaintiff-appellee, Jeffrey Hurst (Father), married in 1991.  The couple has five children, four of whom remain minors: Ja.H., M.H., Jo.H., A.H.  In 2008,

Father and Mother divorced and entered into a shared parenting plan, which essentially allowed them to maintain equal parenting time with the children. During this time, Father and Mother both lived in Carlisle, Ohio located in Warren County and the children attended school in the Carlisle School District.

{¶ 3} In July 2012, Mother decided to move to San Antonio, Texas to be closer to her extended family and care for her ill father. Mother also applied for, and subsequently accepted, a new employment opportunity at Bill Miller's Barbeque in San Antonio, which provided her with a higher wage than she previously earned in Carlisle.

{¶ 4} On July 18, 2012, Mother sent an email to Father indicating her intentions to accept the new position at Bill Miller's Barbeque and relocate to San Antonio. Subsequently, both Mother and Father moved to modify the shared parenting plan and separately sought custody of the minor children. In addition, Mother and Father also moved to suspend and modify child support based on the pertinent changes to custody. During the pendency of this matter, all of the minor children remained in Carlisle with Father and continued to attend school in the Carlisle School District. Mother remained in San Antonio.

{¶ 5} The case was tried to a magistrate on June 13, 2013. The parties agreed that Ja.H. would reside in Carlisle with Father. The only contested issues were the living arrangements for M.H., Jo.H., and A.H. and the consequent issues relating to child support.

{¶ 6} In a written decision, the magistrate found that it was in Jo.H.'s and A.H.'s best interest to reside with Father, and in M.H.'s best interest to reside with Mother.[1] In its decision, the magistrate noted that Mother had made minimal efforts to see the children since she moved to San Antonio and had only seen them four times since August 2012. The magistrate also acknowledged that, since Mother's move to San Antonio, Father has had the

---

1. The trial court also found that it was in the best interest of Ja.H. to reside with Father, however, that finding is not contested by the parties.

sole responsibility to care for the children and Mother had not contributed to the support of the children. The magistrate further found that the children have done very well while in Father's care. Specifically, the children earned straight As on their report cards and A.H. was promoted to first grade. Furthermore, the children were involved in a number of extracurricular activities and are well-adapted socially.

{¶ 7} In addition to the evidence presented by the parties, the magistrate also considered the wishes of the children. The magistrate concluded that A.H. was not sufficiently mature to express her wishes concerning parenting. However, Jo.H. and M.H. were sufficiently mature to express their wishes, with Jo.H. indicating a desire to reside with Father during the school year and M.H. indicating a desire to reside with Mother during the school year. Both children expressed a desire to spend as much time as possible with their nonresidential parent during the summer months.

{¶ 8} Because of the change in custodial arrangements, the magistrate made two child support orders. Each order was based upon Mother's present income at Biller Miller's Barbeque of $44,900. The first order was based upon the retroactive child support Father was entitled to as the residential parent for all four children from the time Mother moved to San Antonio in July 2012 until the current order. The second order addressed future child support payments based upon the split-custody arrangement, with Father the residential parent of three children and Mother the residential parent of one child. The magistrate did not deviate from the child support called for pursuant to the applicable child support worksheets and schedules. Finally, the magistrate also concluded that, because it was Mother's sole decision to relocate to San Antonio, Mother should be responsible for all travel costs associated with the exercise of parenting time.

{¶ 9} Mother filed eight objections to the magistrate's decision and the trial court subsequently overruled those objections. Mother now appeals the decision of the trial court,

raising four assignments of error for review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING MOTHER TO PAY ALL TRANSPORTATION COSTS ASSOCIATED WITH PARENTING TIME.

{¶ 12} In her first assignment of error, appellant argues the trial court abused its discretion in the division of travel expenses associated with parenting time.

{¶ 13} When fashioning a visitation order for a nonresidential parent, trial courts are required to issue an order that is "just and reasonable" under all the conditions the court directs. *Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106, ¶ 60, citing R.C. 3109.051. Although there is not an express statutory provision authorizing trial courts to allocate travel expenses associated with visitation, courts have found that trial courts possess this authority. *Id.*, citing *Carlson v. Carlson*, 3d Dist. Union No. 14-88-20, 1990 WL 72413, *4 (June 4, 1990); and *Rayner v. Rayner*, 2d Dist. Montgomery No. 14011, 1994 WL 312930, *10 (June 29, 1994). In determining whether a trial court abused its discretion in allocating travel expenses, courts have considered the relative income of the parents and whether one parent moved from the place of residence. *Burnett v. Burnett*, 2d Dist. Clark No. 02-CA-04, 2002-Ohio-3561. In *Burnett*, a visitation order that required a mother to bear the entire expense associated with visitation was affirmed where the mother earned substantially more income than the father and where mother voluntarily relocated. *Id.* at ¶ 36.

{¶ 14} We begin by noting that the record reflects that the children are well-bonded with both parents and it is in the best interests of the children to have parenting time with both of their parents. The trial court's order provides that, during the school year, Ja.H., Jo.H., and A.H. are to reside in Ohio with Father and M.H. is to reside with Mother in San Antonio. After school lets out in the summer, Ja.H., Jo.H., and A.H. are to travel to San

Antonio where they will visit with M.H. and Mother until July 15. Thereafter, all four children are to return to Ohio where they will spend the rest of summer break. M.H. will then travel back to San Antonio for the start of school. In addition, the trial court also ordered parenting time on three different holidays for each parent, which alternate every year.

{¶ 15} In addressing the issue of transportation costs, the trial court found that Mother should be solely responsible for travel expenses, as it was Mother's sole decision to move to San Antonio and the cost of transportation could cause Father financial hardship. Mother contends the trial court's decision was inequitable and constituted an abuse of discretion because of a disparity of income, and the fact that she may have to forgo parenting time based on the high cost of air travel.

{¶ 16} Based on a review of the record, we find the trial court's decision was not an abuse of discretion. The magistrate's order found that Father's income is $65,144 and Mother's income is $44,900. Thus, Mother makes approximately $20,000 less annually than Father and is required to pay monthly child support. However, Father is the residential parent for three of the four children and bears the financial burden of his closer day-to-day relationship with the children, including providing the cost of health care and the cost of daycare for A.H. The trial court set Mother's monthly child support obligation at $285.86, which includes a support arrearage.[2]

{¶ 17} Considering that it was Mother's decision to relocate to San Antonio, the minimal amount of child support received by Father for the care of three children, and the financial burden he bears due to his closer day-to-day relationship with the three children in his custody, we find the trial court did not abuse its discretion in ordering Mother to pay the

___

2. The magistrate's order provides for current child support payments in the amount of $233.54 per month, as well as a $46.71 support arrearage and a $5.61 processing charge. The support arrearage is a product of the time when Mother resided in San Antonio and all four children resided in Ohio with Father and Mother did not pay any child support. The magistrate calculated Mother's monthly child support obligation during that period of time to be $921.69, including the processing charge.

entire cost of transportation. *See Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 12 ("[w]hen applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court"). Accordingly, Mother's first assignment of error is not well-taken and is overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ALLOW MOTHER A DEVIATION OR OFFSET FOR EXTRAORDINARY COSTS OF PARENTING TIME IN HER CHILD SUPPORT OBLIGATION TO FATHER.

{¶ 20} In her second assignment of error, Mother alleges the trial court abused its discretion by denying her a deviation in her monthly child support obligation based on the travel expenses associated with the exercise of parenting time.

{¶ 21} A trial court may order child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if the amount calculated would be unjust or inappropriate and would not be in the best interest of the child. *Ornelas*, 2012-Ohio-4106 at ¶ 62, citing R.C. 3119.22; *see also Marker v. Grimm*, 65 Ohio St.3d 139, 143 (1992). When determining whether a departure from the guideline child support amount is warranted, the trial court may consider whether a parent incurs extraordinary costs associated with visitation. *Ornelas* at ¶ 62, citing R.C. 3119.23(D). If the parent incurs extraordinary travel costs, a downward deviation will only be granted if the trial court further finds that such a deviation is in the children's best interest. *Id.*

{¶ 22} Based on our review, we agree with the trial court that a downward deviation in child support is inappropriate. Father is the residential parent during the school year for three children. Mother's monthly child support obligation effective August 15, 2013 is $285.86,

which includes a support arrearage.[3] Although this amount of child support was calculated based upon Father's obligation to support the child in Mother's custody, it is not a great amount of child support for three children. A further reduction in child support payments would not be in the best interest of the children as it would negatively affect Father's ability to support and care for the children. Mother's second assignment of error is overruled.

{¶ 23} Assignment of Error No. 3:

{¶ 24} TRIAL COURT ABUSED ITS DISCRETION BY IMPROPERLY CALCULATING MOTHER'S RETROACTIVE CHILD SUPPORT.

{¶ 25} In her third assignment of error, Mother argues that the trial court erred when it calculated her gross income for purposes of determining the amount of retroactive child support owed.

{¶ 26} "R.C. 3119.01(C)(5) defines 'income' for purposes of calculating child support as 'the gross income of the parent.'" *Benjelloun v. Benjelloun*, 12th Dist. Butler No. CA2012-01-004, 2012-Ohio-5353, ¶ 10. "Gross income" is

> the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in [R.C. 3119.05(D)]; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest * * * and all other sources of income.

*Marron v. Marron*, 12th Dist. Warren No. CA2013-11-109, 2014-Ohio-2121, ¶ 12, citing R.C. 3119.01(C)(7).

{¶ 27} In the calculations adopted by the trial court, the magistrate identified Mother's base salary as $39,000 and added an average annual commission of $5,900 to calculate a

---

3. As previously noted, the magistrate's order provides for current child support payments in the amount of $233.54 per month, as well as a $46.71 support arrearage and a $5.61 processing charge.

total gross income of $44,900.[4]  The trial court arrived at the $5,900 commission figure by considering that Mother had earned $2,335.56 in commissions as of May 19, 2013 and, based on that figure, "Mother is on track to earn an additional $5,900.36 in commissions per year."

**{¶ 28}** On appeal, Mother argues that the trial court erred in its calculation of child support because she was not eligible to receive a commission until she was promoted to Breakfast Manager at Bill Miller's.  Therefore, Mother contends that her income from July 31, 2012 until November 1, 2012 was at the annual rate of $39,000, not $44,900.  As a result, Mother complains that the trial court should have made three child support orders: (1) a retroactive child support order for August 2012 through October 2012 during which she did not earn a commission, (2) a second retroactive child support order from November 2012 through June 2013 during which she did earn a commission, and (3) a prospective child support order commencing July 1, 2013 when the split-custody arrangement went into effect.

**{¶ 29}** After review, we find Mother's assignment of error is without merit.  Here, assuming Mother is correct and the trial court inappropriately calculated her gross income for purposes of calculating child support, we note that Mother only objects to the approximate three-month period in which she did not receive commission payments.  In fact, in her brief, Mother acknowledges that "it would be proper to use $44,900.00 as her income" from the time of her promotion.  Based on our review of the testimony and the related child support worksheets, we find the difference in Mother's monthly child support obligation, based on any alleged error, would be de minimis, and therefore would not rise to the level of an abuse of discretion on the part of the trial court.  *See e.g., Tomasik v. Tomasik*, 9th Dist. Summit No.

---

4. Mother testified that, as the Breakfast Manager, she receives a commission based on the profitability of her store.  The commission payments are paid out at the end of every "period," which may be anywhere from three to six weeks.

17822, 1997 WL 45055, (Jan. 29, 1997) (deviation in child support was de minimis); *Citta-Pietrolungo v. Pietrolungo*, 8th Dist. Cuyahoga No. 85536, 2005-Ohio-4814 (failing to reverse a calculation of child support because the difference would be minimal and de minimis). Accordingly, because this alleged error amounts to, at worst, a de minimis change in Mother's monthly child support obligations for that three-month period, Mother's third assignment of error is overruled.

{¶ 30} Assignment of Error No. 4:

{¶ 31} THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING DESIGNATING FATHER AS RESIDENTIAL PARENT OF JO.H. AND A.H.

{¶ 32} In her fourth assignment of error, Mother argues the trial court abused its discretion in designating Father as residential parent of Jo.H. and A.H.

{¶ 33} A trial court's decision regarding custody will not be disturbed on appeal absent an abuse of discretion. *Rarden v. Rarden*, 12th Dist. Warren No. CA2013-06-054, 2013-Ohio-4985, ¶ 9, citing *Valentine v. Valentine*, 12th Dist. Butler No. CA2010-12-320, 2012-Ohio-426, ¶ 10. An abuse of discretion is more than an error in judgment or law and connotes that the trial court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When reviewing a trial court's decision, the reviewing court should be "guided by the presumption that the trial court's findings were indeed correct." *Id.*

{¶ 34} R.C. 3109.04(E)(2)(b) permits the court to modify the terms of a shared parenting plan if it determines that the modifications are in the best interest of the child. *Koeppen v. Swank*, 12th Dist. Butler No. CA2008-09-234, 2009-Ohio-3675, ¶ 32; *Valentine* at ¶ 13. In determining the best interests of the child, the trial court must consider all relevant factors including, but not limited to, the enumerated factors in R.C. 3109.04(F)(1). *Rarden* at

¶ 12. These factors include the wishes and concerns of the child as expressed to the trial court during an in camera interview; the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to the child's home, school, and community; the parent more likely to honor and facilitate parenting time rights; and the mental and physical health of all persons involved. *Hunter-June v. Pitts*, 12th Dist. Butler No. CA2013-09-178, 2014-Ohio-2473, ¶ 14.

{¶ 35} Although R.C. 3109.04(F)(1)(j) requires a trial court to consider whether a parent has established a residence outside of Ohio, "nonresidence alone should not deprive a parent of custody." *Rarden* at ¶ 13, quoting *Ornelas*, 2012-Ohio-4106 at ¶ 13. As the Eighth District has held:

> [t]he overwhelming weight of authority is to the effect that a nonresident or one who intends to become a nonresident will not be deprived of the right to custody of a child merely because of his nonresidence; and that if the best interests of the child will be promoted, custody will be awarded to nonresidents, the same as it would be to residents; one intending to become a nonresident will be permitted to remove the child to his or her new residence.

*Ornelas* at ¶ 13, quoting *In re Marriage of Barber*, 8 Ohio App.3d 372, 375 (8th Dist.1983).

{¶ 36} Upon a thorough review of the record, we find the trial court did not abuse its discretion by designating Father as the residential parent for Jo.H. and A.H. The magistrate heard testimony that Jo.H. and A.H. have been lifelong residents of Carlisle, Ohio and are well adjusted to Father's home, community, and their respective schools in Carlisle. All of the children resided with Father during the pendency of the matter and are doing well both academically and socially. Although the GAL opined that the children could adjust to life in San Antonio with Mother, he acknowledged that such a move would represent a "dramatic change" for the children and recommended that Father be named the residential parent for Jo.H. and A.H. In addition, although the magistrate found that A.H. was not sufficiently

mature to express her desired living arrangements, Jo.H. was found sufficiently mature and expressed his desire to reside with Father during the school year.

{¶ 37} In her brief, Mother points out some factors that might favor her as residential parent and seeks to discount some of the factors found and relied upon by the trial court. In particular, Mother alleges that Father has "historically" been less than accommodating of her parenting time with the children and also notes that the larger school district in San Antonio provides educational opportunities to the children. Mother also argues that the trial court inappropriately considered the fact that she has not made any child support payments or offered any financial support since her move to San Antonio. However, based on our review, we find Mother's arguments are without merit. The trial court had good and valid reasons to designate Father as the residential parent and did not abuse its discretion in making that determination. Accordingly, Mother's fourth assignment of error is overruled.

{¶ 38} Judgment affirmed.

S. POWELL, J., concurs.

HENDRICKSON, P.J., concurs separately.

**HENDRICKSON, P.J., concurring separately.**

{¶ 39} I concur with the majority but write separately to specifically reference Mother's first assignment of error alleging the trial court abused its discretion by ordering Mother to pay all of the travel expenses associated with parenting time. If there had been sufficient evidence as to Mother's expenses and inability to pay for all travel expenses, including more than vague estimates as to the price of air travel, I would have found that the trial court abused its discretion by failing to consider the parties' incomes, ability to pay for travel expenses, and best interests of the children.